LULING OIL & MANUFACTURING COMPANY v. WILLIAM GOHMERT ET AL.

Decided May 8, 1908.

**1.—Testimony—Unanswered Question.**

Where a witness in answer to a question which was objected to simply stated that he did not know, an assignment of error based upon the ruling of the court in permitting the question to be asked, is without merit.

**2.—Assignment of Error—Rule 31.**

An assignment of error, that the court erred in overruling appellant's motion for new trial for each and every ground set up in the same, followed by a proposition to the effect that it is the duty of the court to grant a new trial when errors are called to its attention which are sustained by the record, and by a statement which consists of a copy of the grounds alleged in the motion for new trial, is not in compliance with rule 31 for the Courts of Civil Appeals, and will not be considered.

**3.—Building Contract—Changes—Discharge of Surety.**

Changes made in a building contract by the owner of the building without the consent of the surety on the contractor's bond, will discharge the surety. Changes in such contract considered, and held sufficient to discharge the surety.

Appeal from the District Court of Dewitt County. Tried below before Hon. James C. Wilson.

*A. B. Storey* and *P. J. Greenwood,* for appellant.

*Davidson & Bailey,* for appellee Stratton.

REESE, ASSOCIATE JUSTICE.—This is a suit by the Luling Oil & Manufacturing Company against William Gohmert and John Stratton upon a builder's contract, and a bond executed by Gohmert as principal and Stratton as surety. The work contracted to be done by Gohmert was the erection complete of an oil mill in the town of Luling for plaintiff. To secure the performance of the work in accordance with the contract Gohmert entered into a bond with Stratton as surety in the sum of $5000. The contract price of the mill was $54,850. It was alleged that the mill was not built for the contract price, but that plaintiff had to pay out, in order to complete the mill and clear off debts and. liens contracted by Gohmert, the sum of $5615.15, in addition to the contract price. It was further alleged that the contract provided for the payment of $25 per day as liquidated damages for the delay if the work was not completed by a day named, that there was a delay of 60 days whereby defendants became liable for the additional sum of $1500. Plaintiff prayed for judgment against Gohmert for $7115.15, and against Stratton for $5000, being the amount of his bond.

Stratton pleaded that, without his knowledge or consent, there had

been certain changes made in the contract by plaintiff and Gohmert whereby additional and more expensive work was required by plaintiff and agreed to by Gohmert's agent, Palmie, such changes in the construction being specifically set out. It was also pleaded that the contract had been violated in the time and manner of payments made to Gohmert by plaintiff, and that these deviations from the contract and changes in the terms thereof released Stratton, the surety, from obligation upon the bond.

Gohmert also answered, but as he is not a party to this appeal it is not necessary to refer further to his answer.

The case was tried by the court without a jury and judgment rendered in favor of Stratton, the court finding that the changes in the contract released him from liability. From this judgment plaintiff, the Oil Company, appeals. There was judgment against Gohmert for $5615.15, from which no appeal was taken.

The question presented is the correctness of the judgment releasing Stratton as surety on the bond.

The first and second assignments of error are addressed to the action of the court in permitting counsel for appellee to ask certain questions of witnesses. In each case the witness answered that he did not know. The assignments are without merit.

The third assignment is also overruled as without merit.

The fourth assignment is as follows: "The court erred in overruling plaintiff's amended motion for new trial in this case on the 2d day of July, 1907, for each and every ground set up in said motion." The assignment is followed by the proposition that it is the duty of the court to grant a new trial when errors are called to its attention, which are sustained by the record. For statement from the record to sustain this assignment and proposition there is copied the grounds set up in the motion for new trial.

Mindful of what has been lately said by the Supreme Court in Cobb v. Johnson (101 Texas, 440) we have looked to the argument following the so-called statement and can not get out of it anything that would pass muster as such "a brief statement, in substance, of such proceedings, or parts thereof, contained in the record, as will be necessary and sufficient to explain and support the proposition, with reference to the pages of the record" as is required by rule 31. A proper consideration of the assignment would require that, without guide or index from the statement, we examine the entire statement of facts. There is no reference in either statement, or argument, to any evidence of appellee, and neither pretends to contain even a reference to all of the evidence material to the assignment. In addition, the assignment is multifarious and embraces several entirely distinct propositions, and is followed by the single very general proposition above stated. For these reasons the assignment will not be considered.

For the same reason the fifth assignment will not be considered.

The sixth assignment of error is overruled. The testimony of appellee's witnesses shows that the changes in the work were directed to be made by Zedler, one of the building committee, who was shown to have had entire charge of the supervision of the work as the representative of the Oil Company. This testimony further tends to show that some

of the changes were made by Palmie, Gohmert's agent, under protest, and only after strenuous objection.

The seventh assignment assails the finding of fact of the trial court, that there had been changes in the contract, plans, and specifications thereunder by Gohmert and the Oil Company; and the conclusion of law that thereby appellee had been released from obligation on the bond. The statement is made in the assignment that there is no evidence authorizing the finding. The statement thereunder contains no reference to the testimony in the record, if there be any, in support of the finding of the court. With the assistance of appellee's brief we have examined the statement of facts, with the result that we find that there is sufficient evidence to show that during the progress of the work the following changes were made in the work, upon the demand of appellant, all of which were distinct deviations from the plans and specifications, as shown by the testimony, and of which appellee had no knowledge.

By agreement between the building committee and Palmie, after the boilers had been put in to burn coal or wood, they were changed so as to burn oil. This required considerable work taking out the old work and putting in the new. One witness testified that the delay in the completion of the mill on this account amounted to, approximately, three or four weeks. The extra cost of the installation of the oil burning apparatus was paid for by appellant.

The original plan called for a seed house 60 x 250 feet in the shape of an L, that is, it was to be built 60 x 150 feet with an addition or L, 60 x 100 feet, according to the blue prints, as testified by the witness. After the first part was finished appellant acquired a lot which they did not have before, which enabled them to change the plan of the seed house and build it straight, 60 x 250 feet. It was found that the ground for the foundation of this extension, on the lot just acquired, was in an old tank filled with trash of various kinds and this required a good deal of extra work in digging for the foundation of the building, for which they had to go, in some places, nine feet. The cost of this extra work was about $75 and involved a delay of about 14 days in the completion of the work. The floor in the engine room was changed from pine to maple, which involved an additional cost, the exact amount of which is not stated, further than that the pine flooring cost $28 per thousand and the maple flooring $70 per thousand. This change caused a delay of about a week. There was a change made in the main shafting, the exact nature of which can only be shown by giving the testimony of the witness, as follows: "The main shafting was changed in the meal room. After the shafting had been completed Mr. Zedler came and said that he did not want any cross-belt in these and Mr. Palmie told him that was all the contract called for; Mr. Zedler said that he did not want the cross-belt regardless of whether it was in the specifications or not, and we had to change it. It took some week or eight days to get the stuff to make the alterations. There was a week or ten days of delay caused by the change in the main shafting. Mr. Zedler, who ordered us to make this change in the main shafting, was a member of the board and was the one who did the ordering of the machinery. The additional expense of taking out the shafting and put-

ting it the way Zedler demanded, as to labor alone amounted to about $50. I think the material cost, approximately, $150."

Where the contract called for 4-inch shafting it was changed, upon the requirements of Zedler, to 5-inch shafting, the cost of which was about twice as much as the 4-inch shafting. This caused a delay in the work of a week or ten days. An extra hanger or truss had to be put in, upon the demand of Zedler, at an additional cost of $125 to $150, and the witness stated that this was entirely unnecessary.

There was nothing in the contract to authorize any of these changes, and they were all made upon the demand of Zedler, who represented appellant in the matter. It is clear that they added materially to the cost of the work and the time required to complete the mill. The evidence supports the conclusions of fact of the trial court in the matter of the changes in the contract, and the legal conclusion drawn by him therefrom is correct. (Lane v. Scott, 57 Texas, 369; Ryan v. Morton, 65 Texas, 262; Randall v. Smith, 2 U. C. (Posey), 397; United States v. Freel, 92 Fed. Rep. 306-309, and cases cited.)

In the clear and exhaustive opinion of the court in the case last cited, it is said: "In any case, the surety, in binding himself to the first contract, limited rigidly his liability to that instrument, and its scope measures with precision his undertaking. If he consented to vouch unwisely, he is entitled to suffer to the full measure of his folly, without a favorable revision of his liability by the principal. And, on the other hand, it is his right to fix the final boundary of his faith in the financial, and, in the case of a building contract, the architectural, capacity of his principal, and mark out in the agreement whatever method should attend the execution of the work; and the main contracting parties may not add ever so little to the burden which the contractor has assumed, or deviate from the methods which were to accompany its fulfillment. It results from this that he who would charge a surety for his principal's breach of contractual duty must travel without deviation the way pointed out in the contract, however iron-bound it may be, for there is for the surety in the enforcement of his bond no equity or latitude beyond its strict terms. Such is the nature of the implied condition upon which the surety's liability depends."

Upon the question of the character and extent of changes in the contract which will release the surety, there is a collection of the authorities which support the conclusion that the changes made in the contract in the present case were entirely sufficient to discharge and release appellee from the obligations of the bond. A collection of authorities on the point will also be found in 27 Am. & Eng. Ency. of Law, 496.

What has been said disposes also of the remaining assignments of error, which are overruled. There is no merit in appellee's cross-assignment.

We find no error in the record and the judgment is affirmed.

*Affirmed.*