WALSH et al. v. METHODIST EPISCOPAL CHURCH SOUTH, OF PADUCAH, et al. (No. 700.)†

(Court of Civil Appeals of Texas. Amarillo. Jan. 2, 1915. Rehearing Denied Jan. 30, 1915.)

1. APPEAL AND ERROR ⊜⟞293 — MOTION FOR NEW TRIAL—BILL OF EXCEPTIONS—NECESSITY.

Under Rev. St. 1911, art. 1612, as amended by Acts 33d Leg. c. 136, and articles 1987–1991, relating to assignments of error and to exceptions to conclusions of law, it was sufficient for review that appellants, in the judgment entry, had noted therein exceptions to the findings of fact and conclusions of law, and had excepted to the judgment of the court, and it was not necessary to procure review of assignments of error filed in the lower court to conclusions of law and fact filed by the court that there should be a motion for new trial and bills of exceptions to such findings.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1395, 1700–1703, 1705, 1706; Dec. Dig. ⊜⟞293.]

2. APPEARANCE ⊜⟞24—DEFECTS IN PROCESS.

Motion to quash service of citation will not prevail where the defendants appeared and answered thereto.

[Ed. Note.—For other cases, see Appearance, Cent. Dig. §§ 118–143; Dec. Dig. ⊜⟞24.]

3. DAMAGES ⊜⟞79—LIQUIDATED DAMAGES OR PENALTY—DELAY.

Where a contract for the building of a church provided that, on failure to complete within the time specified, the builder should pay the sum of $10 per day, which the other party should deduct out of the contract price, if sufficient funds remained in its hands, otherwise the builder would pay the sum, such sum might be treated as liquidated damages, as being fixed because of the difficulty in ascertaining the damages.

[Ed. Note.—For other cases, see Damages, Cent. Dig. §§ 164–169; Dec. Dig. ⊜⟞79.]

4. DAMAGE ⊜⟞175—EVIDENCE—LIQUIDATED DAMAGES.

In determining whether a stipulation for payment of $10 per day for delay by a builder of church was liquidated damages or penalty, testimony that the church society used a courthouse and a church building of another denomination without paying anything for the use, and thereby sustained no damages, was irrelevant.

[Ed. Note.—For other cases, see Damages, Cent. Dig. §§ 469–471; Dec. Dig. ⊜⟞175.]

5. EVIDENCE ⊜⟞185—BEST AND SECONDARY EVIDENCE — COPIES — NOTICE TO PRODUCE ORIGINAL.

An objection against admission of carbon copies of letters written by plaintiff to one of the defendants without notice to produce the originals should have been sustained as against the contention that the bringing of the suit was notice that such evidence would be demanded; the suit being on a contract, and not upon the letters, which merely related to performance of the contract.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 642–660; Dec. Dig. ⊜⟞185.]

6. APPEAL AND ERROR ⊜⟞1050 — HARMLESS ERROR — ADMISSION OF SECONDARY EVIDENCE.

In an action against a building contractor and surety on his bond, the erroneous admission of carbon copies of letters written by plaintiff to defendants without notice to produce the originals was harmless, where plaintiff had introduced a letter to show the time of default, as shown in the copies, and the trial was before the court.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1068, 1069, 4153–4157, 4166; Dec. Dig. ⊜⟞1050.]

7. PRINCIPAL AND SURETY ⊜⟞123 — RELEASE OF SURETY—"DEFAULT"—NOTICE.

Where a building contract was not completed September 1st, as required, and on December 14th the building contractor notified the owners that he could not complete it, his "default," within the meaning of the contract requiring notice to his surety immediately after "default" of the principal, occurred September 1st, and not on the later date; "default" meaning nonperformance of a duty, whether arising under a contract or otherwise, and in its most general sense meaning a failing.

[Ed. Note.—For other cases, see Principal and Surety, Cent. Dig. §§ 304–311; Dec. Dig. ⊜⟞123.

For other definitions, see Words and Phrases, First and Second Series, Default.]

8. PRINCIPAL AND SURETY ⊜⟞123—RELEASE OF SURETY—NOTICE OF DEFAULT.

Where a building contract provided that, if the principal should in any manner default in

performance or abandon the work, the obligee should immediately notify the surety, which should have the right to perform or sublet the contract, the right to notice was a condition precedent to right of recovery against the surety; and the time for completion of the contract having expired without completion, but the surety not being notified until several months later, and not until the contractor had notified the creditor that he could not complete the contract, the surety was not liable.

[Ed. Note.—For other cases, see Principal and Surety, Cent. Dig. §§ 304–311; Dec. Dig. 123.]

9. PRINCIPAL AND SURETY 123—RELEASE OF SURETY—NOTICE OF DEFAULT—APPLICATION OF STATUTE—CLAIM FOR DAMAGES.

Rev. St. 1914, art. 5714, declaring that stipulations in contracts requiring notice of any "claim for damages" as a precedent condition to right to sue thereon if less than 90 days is void, did not apply to a contract of a surety entitling the surety to immediate notice of default by the principal; the statute not applying to mutual 'and reciprocal obligations determining the rights of the parties under the contract.

[Ed. Note.—For other cases, see Principal and Surety, Cent. Dig. §§ 304–311; Dec. Dig. 123.]

10. PRINCIPAL AND SURETY 101—RELEASE OF SURETY—ALTERATION OF CONTRACT.

Where a contract of suretyship provided for notice to the surety of alterations in the contract, but did not require its consent thereto unless the costs should aggregate 10 per cent. of the bond, failure to give notice of an alteration costing less than the amount prescribed did not release the surety.

[Ed. Note.—For other cases, see Principal and Surety, Cent. Dig. §§ 169–180; Dec. Dig. 101.]

11. PRINCIPAL AND SURETY 101—RELEASE OF SURETY—ALTERATIONS OF CONTRACT.

Trifling alterations should not release a surety, and the rule applied in cases of voluntary suretyship when there is an alteration discharging the surety should not apply where the surety is engaged in the business of surety for hire, but the contract, like that of insurance, should be construed against the surety company.

[Ed. Note.—For other cases, see Principal and Surety, Cent. Dig. §§ 169–180; Dec. Dig. 101.]

Appeal from District Court, Cottle County; Jo. A. P. Dickson, Judge.

Action by the Methodist Episcopal Church South, of Paducah, and others against E. L. Walsh and the Texas Fidelity & Bonding Company. Judgment for plaintiffs, and defendants appeal. Judgment against E. L. Walsh affirmed, and the judgment as to the Texas Fidelity & Bonding Company, surety on the bond of said Walsh, reversed and rendered.

J. M. Blankenship, of Wichita Falls, for appellants. James M. Whatley and Browne & Hawkins, all of Paducah, for appellees.

HUFF, C. J. The appellees, the Methodist Episcopal Church South, of Paducah, Tex., and others, the trustees thereof, instituted this suit against the appellants, E. L. Walsh and the Texas & Fidelity Bonding Company, on the 18th day of March, 1914, to recover damages for breach of contract alleged by appellees to have been sustained by them on the ground that appellant E. L. Walsh failed to complete a one-story brick-veneered church building in the town of Paducah, Tex., according to the terms of a valid written contract. It is alleged substantially that the contract was made and entered into by and between E. L. Walsh, as principal, and the Texas Fidelity & Bonding Company, as sureties, being the parties of the first part, and the Methodist Episcopal Church South, of Paducah, Tex., and its trustees, parties of the second part, on the 17th day of May, 1913, and said building was to be completed by the 1st day of September, 1913; and appellees allege that said building was not completed for 105 days thereafter, and that said appellants were to pay the sum of $10 per day as liquidated damages for every day of delay 'after said September 1, 1913; and also for breach of contract in failing to furnish sufficient labor and material and to pay for the same, to complete the church, and that the appellees were compelled to discharge the items for material to the amount over and above the contract price of the sum of $200, asking for judgment for the full amount of $1,250.

The appellants answered generally and specially, which will not be necessary to set out in detail.

[1] First the appellees object to the consideration of assignments 1 to 11, inclusive, and present the proposition that courts will not consider the assignments of error filed in the lower court to the conclusions of law and fact filed by the court trying the cause in the absence of a motion for new trial, calling the court's attention to such error of fact and law committed by the trial court, and prepare bills of exceptions to such findings of fact and conclusions of law as found by the court. This court held in the cause of Cornelius' v. Harris, 163 S. W. 346, that it was not necessary in a trial had before a court without a jury to file a motion for new trial in order to file assignments of error calling in question the sufficiency of the evidence as a question of law to support the judgment. In American, etc., v. Mercedes, etc., 155 S. W. 286, the same conclusion was reached, even before the amendment of article 1612 by the Thirty-Third Legislature and the addition to the rules of rule 101a (159 S. W. xi) by the Supreme Court. The appellants, in the judgment entry, had noted therein their exceptions to the findings of fact and conclusions of law filed by the court, and also excepted to the judgment of the court. We think this sufficient. Smith v. Abadie, 67 S. W. 1077; Brenton v. Peck, 39 Tex. Civ. App. 224, 87 S. W. 898; Supreme, etc., v. Ericson, 131 S. W. 92; Bond v. Garrison, 127 S. W. 839, bottom page 843, top 844; Edwards v. Youngblood, 160 S. W. 288. In this record there are bills of exceptions, state-

For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

ments of facts, as well as findings of the trial court. Where this is true we do not understand it to be necessary to file exceptions to the findings of the trial court. Tudor v. Hodges, 71 Tex. 392, 9 S. W. 443; Gillespie v. Crawford, 42 S. W. 621–625. The Supreme Court, in the case of Insurance Co. v. Milliken, 64 Tex. 48, gives the reason for the exceptions to the findings of the trial court. When made, the opposite party must take notice of it, and, if the findings are not as full as they should be, it will be his right to have a statement of facts, or, in other respects, have a complete presentation of the case. We do not understand the revision of 1911 to have changed the rule as it heretofore existed under old article 1333. This article is brought forward in the revision as articles 1987–1991, inclusive.

[2] The first and second assignments are overruled. The motion to quash the service of the citation we do not think good in the first place, and, further, it appears the appellants answered thereto. The application for continuance does not show sufficient diligence. The court's reason given for overruling the motion justified the action of the court.

[3] The third and eighth assignments assert the proposition that the contract authorizing a recovery as liquidated damages the sum of $10 per day after September 1, 1913, was a penalty, and not a liquidated demand. The article of the contract upon which the suit was based is as follows:

"The contractor shall complete the several portions and the whole of the work comprehended in this agreement by and at the time or times hereinafter stated, to wit, September 1st, 1913; and in the event the contractor fails to complete the same within the time specified, he forfeits the sum of $10.00 per day for every day it remains incomplete on his contract as liquidated damages; and party of the second part (the trustees) shall deduct the same out of the contract price if sufficient funds then remain in their hands; otherwise party of the first part to pay same at Paducah, Texas, on demand."

This is a contract to build a church according to certain plans and specifications, and to complete the same by the 1st day of September, 1913. The damages for failing so to complete the building would necessarily be uncertain and difficult to arrive at under the ordinary rules of law. The compensation for the breach was evidently fixed in consequence of the difficulty in ascertaining the damages. Indianola v. Railway Co., 56 Tex. 606–608; City of Marshall v. Atkins, 127 S. W. 1151.

[4] It has been held that contracts to pay a certain sum per day after a given time can be recovered as a liquidated demand. Collier v. Betterton, 87 Tex. 440, 29 S. W. 467; Brown Iron Co. v. Norwood, 69 S. W. 253; Orenbaum Bros. v. Sewell, 153 S. W. 905. Especially is this the rule where the damages are difficult of ascertainment. In this case appellant sought to prove that the church used the courthouse and a church belonging to another denomination, without paying anything for the use thereof, and here urges no damages were sustained by the appellees. This testimony we think irrelevant. The question would be the value of the use of the building during the time it should have been in use after September 1st. This case certainly falls under the rule above stated. We think from the contract the intention of the parties is clearly expressed to pay $10 per day as a liquidated sum. It is stipulated that the same shall be deducted from the contract price if sufficient funds remain in the hands of the trustees; otherwise the contractor was to pay the sum on demand. We see no room to construe a different meaning from the one expressed in the contract, especially under the particular circumstances of the subject-matter of the agreement. Yetter v. Hudson, 57 Tex. 604; Eakin v. Scott, 70 Tex. 442, 7 S. W. 777; Orenbaum v. Sewell, 153 S. W. 905, and authorities cited. These assignments will be overruled.

[5, 6] The fourth, sixth, and seventh assignments present error in the action of the court in admitting certain carbon copies of letters from parties representing the appellees to the Texas Fidelity & Bonding Company, during the month of December, 1913, and January, 1914. The objection is that they are copies, and not originals, and that no notice was given to produce the originals. It is suggested by the appellees that the matter of the suit was such as to give appellant notice that such evidence would be demanded and offered, citing Presidio County v. Clarke, 38 Tex. Civ. App. 320, 85 S. W. 475. We are inclined to think the suit is not sufficient for that purpose. The suit was on the contract, and not on the letters. It has been held in this state that carbon copies of letters are not admissible in the absence of notice to produce the original, and that such letters are in the same class with letter press copies. McDonald v. Hanks, 52 Tex. Civ. App. 140, 113 S. W. 604; Thompson v. Berg, 10 Tex. Civ. App. 200, 30 S. W. 454. All of these letters appear to have been written after the one appellant offered to show the first notice of default on the part of Walsh and received by the bonding company. They were only admissible for that purpose, as we take it. However, there was no injury shown to have resulted to appellants by their admission. The trial was before the court, and we will not presume he considered them as evidence of the amount due by the bonding company to appellees. No injury being shown, these assignments will be overruled. In doing so, however, we desire to say we believe the court should have excluded them upon the objections made.

The fifth assignment will be overruled. We think the evidence offered was sufficient to show that the letter of December 31, 1913, was from the bonding company, or written by its authority. It is shown to have been

received in due course of mail in reply to a letter addressed to the bonding company. There was no error in its admission.

[7, 8] By the ninth assignment it is urged the court erred in rendering judgment against the Texas Fidelity & Bonding Company, because under the conditions of its bond it was the duty of appellee to properly notify the company of any default on the part of Walsh, the contractor. The evidence shows that Walsh made default in failing to complete the building on September 1, 1913, and the company was not notified of that fact until December 16, 1913. The clauses of the bond relied upon are as follows:

"Provided, however, this instrument is executed by the company as surety upon the following expressed conditions, which shall be precedent to the right of recovery hereunder."

Section 3 is as follows:

"If said principal shall in any manner default in the performance of any matter or thing in said contract specified to be by said principal performed, or in the event of said principal abandoning the work provided by said contract to be done by said principal, the obligee shall immediately so notify the company, and thereafter the company shall have the right at its option to assume and sublet said contract and to proceed thereunder as if no default or abandonment had occurred; and if the company elect to assume said contract, all moneys agreed therein to be paid said principal, and which at the time of default be due the principal, shall thereupon become payable to the company, and shall be paid to it, anything to the contrary in said contract notwithstanding."

The seventh provision of the bond is:

"None of the conditions or provisions contained in this instrument shall be deemed waived by the company unless the written consent of such waiver be duly executed by its president or active vice president, and its seal be thereto affixed, duly attested. Nor shall this instrument, or any rights thereunder, be assignable unless with a like consent duly executed and attested as aforesaid."

The ninth provision is:

"All notices and other evidence required by this instrument to be furnished by the obligee to the company shall be in writing, and shall be forwarded by registered letters, addressed to the company at its principal office in the city of Waco, Texas."

The evidence in this case discloses that the appellant company wrote several letters to the appellees of inquiry, with reference to the work on the building by Walsh under his contract; to which it received no reply until the letter dated December 16, 1913, was written, and in which they inclosed Walsh's letter to them. The letter from Walsh is dated December 14, 1913. Therein he notified the trustees that he would be compelled to leave the contract up to the appellees to do as their best judgment should suggest. The evidence is conclusive that this is the first notice the appellee gave the bonding company that Walsh had not complied with his contract. Mr. Drummond, the secretary and treasurer, or who had charge of the correspondence, testified:

"I did not consider he had defaulted until that time, and I knew our bond provided for $10 per day penalty. We were resting on that clause. We expected the contract to be carried out. We thought any delay after September 1st—we thought we would not say anything, but hold the bonding company for $10 per day."

The trial court found the notice of default was given immediately after default. It is apparent that the trial court based his finding of facts upon the declaration of Walsh made December 14th, to the effect that he could not proceed with the work. We think the default occurred September 1st, when it was ascertained that the building would not be completed at the time specified in the contract. It is urged in this court by appellees that the term "default," used in the contract, referred to the act of Walsh in abandoning the contract and the work on the building. We do not agree with appellees. They sued on the $10 per day clause, and secured a recovery for that sum against both appellants on the ground that the contract was not completed September 1, 1913. Unless Walsh defaulted on that day, no recovery could be had for the liquidated damages. The trial court found under the contract that Walsh was entitled to a credit of 21 days on account of bad weather. At the expiration of 21 days from September 1st, the court found a default of 84 days, and that appellees were entitled to $840. "Default" is defined to be:

"The nonperformance of a duty, whether arising under a contract or otherwise. In its largest and most general sense it seems to mean failing." Rawle's 3d Rev. Bouvier; 13 Cyc. 759.

If a defendant failed to make an appearance within the time prescribed by law, we say he has defaulted. In the contract the work was to be completed by September 1st. Walsh did not so complete the work, and hence defaulted under his contract. Under his contract it was his duty to have done so. If he did not, he agreed to pay $10 per day as liquidated damages. The bonding company guaranteed that he would do so, but, as a condition of its liability, it required immediate notice of such default, and this notice, by the terms of the contract, was made a condition precedent to a right of recovery against it. It was the right of the surety to fix the boundary of its obligation to guarantee the performance of the contract by the contractor. The obligees, in order to hold the surety on the obligation cannot deviate from the terms of its contract. The principle is so well settled that quotations from authorities will not strengthen it. National Surety Co. v. Long, 125 Fed. 887, 60 C. C. A. 623, is a case very much like this. Luling Oil Mfg. Co. v. Gohmert, 50 Tex. Civ. App. 606, 110 S. W. 772.

This bond contains the mutual covenants of the parties—covenants by the surety company that Walsh the principal should construct the building according to the terms of the contract, and that, if he failed to perform the contract in the time and manner therein

specified, the trustees would immediately notify the surety, and that the latter might then take the contractor's place and complete the building. The appellees, the trustees in this case, failed to keep their covenant before the surety company had in any way failed to comply with those which it had made. On this ground they cannot enforce the fulfillment of the covenants of the surety company. He who commits the first substantial breach of a contract cannot maintain an action against the other contracting party for a subsequent failure on his part to perform.

[9] It is urged by appellees that article 5714, R. C. S., renders the provision in the bond requiring notice void. The statute declares void stipulations in contracts requiring notice to be given of "any claim for damages" as a precedent condition "to the right to sue thereon" if less than 90 days. We do not think this article applicable to contracts of this kind. The notice required in this case was not the claim for damages, but to notice of "default" by the principal. The statute does not apply to mutual and reciprocal obligations which determine the rights of the parties under the contract. Under the bond it was necessary to give immediate notice of default in order to bind the bonding company. Under the statute the liabilty under the terms of the contract is complete. The failure to give the notice thus referred to is a waiver of a right for damages thus accrued under a valid and binding contract. If notice of default is not given in this case, no right of action for damages ever existed; hence there was no waiver of such damages involved.

[10] The tenth assignment complains that the judgment is erroneous because the facts show there were changes in the plans and specifications for the church. The trial court finds the alterations made were immaterial, and we think his finding is sustained by the evidence. The bond with reference to this matter stipulates:

"If any change or alteration by the principal and obligee be made in the plans and specifications for the work mentioned in said contract, the obligee shall immediately notify the company of such changes or alterations, giving a description thereof and stating the amount of money involved by such change or alterations, provided, however, that when the costs of said change or alterations shall in the aggregate amount to a sum equal to 10 per cent. of the penal sum of this bond no further change or alteration shall be agreed upon by the principal obligee until consent of the company shall first be obtained thereto."

The bond provides for notice in case of any change, but it does not require its consent thereto, unless the costs shall aggregate 10 per cent. of the bond; but we do not understand from the above clause that when the change is less than the amount, and no notice is given, that it is agreed thereby that it is to be relieved. In this case there is no stipulation that the company shall not be liable if the alteration is less than 10 per cent. of the obligation. We think the stipulation as to the condition precedent should be held to apply to such alterations as shall exceed ten per cent. of the penal sum of the bond, and until that is shown no forfeiture should be declared.

[11] The contract between Walsh and the trustees provided for making changes and how such changes should be made. It occurs to us that the bonding company, in guaranteeing the performance of the contract, must have known of the provision and the right of the trustees to change the plans and specifications by agreement with Walsh; and, while it stipulated for notice, it made no provision that its consent must be had to such changes where they were less than 10 per cent. Upon the terms of the bond we are inclined to think, under the evidence in this case and the findings of the court, that the right of the trustees to sue upon the contract of indemnity should not be defeated merely because notice was not given. It occurs to us that the rule adopted by the Missouri courts is the correct one; that is, that a few trifling alterations should not defeat the obligation of the bond. The rule which is frequently applied in cases of voluntary suretyship when there is an alteration, discharging the surety, ought not to apply where the surety is engaged in the business of surety for hire. We think bonding companies, under our statute, who make contracts of indemnity as such, should fall under the rules applicable to contracts of insurance, and their contracts should be strictly construed as to such companies, and no unreasonable right of forfeiture should be allowed, since the contracts are prepared by the company, and, as a rule, the obligations are full of conditions and stipulations for the restrictions of the obligation. General Bonding Co. v. Beckville Independent School District, etc. (Tex. Civ. App.) 156 S. W. 1161; Rule v. Anderson, 160 Mo. App. 347, 142 S. W. 358; Martin v. Whites, 128 Mo. App. 117, 106 S. W. 610; Hiller v. Daman (Mo. App.) 166 S. W. 869.

Clearly, under the provisions of this contract, the bonding company would not be liable for the liquidated damages; and we have also concluded that in the failure to notify the bonding company immediately the default to complete the building in the time prescribed, that the appellees are defeated from a recovery upon the bond for any amount. It was stipulated by the bonding company that it should, upon notice of such default, have the right, at its option, to assume and sublet the contract, and to proceed thereunder, and that, if it did so, all moneys which were to be paid to the contractor, and which at the time of the default were due the contractor, should become payable to the bonding company, and should be paid to it. While by the terms of the contract it is not necessary to hold that such a right was a

valuable one, yet the reason for the stipulation by the bonding company is obvious. By taking charge of the contract and the money, they may have saved themselves from loss by damage resulting from a failure to comply with the contract, and they stipulated for this right, which the appellees could not disregard and violate without subjecting themselves to the penalty of a forfeiture of recovery on the bond.

The judgment as to Walsh will be affirmed. The judgment as to the Texas Fidelity & Bonding Company will be reversed, and here rendered in its favor, and that it recover its costs on this appeal and in the court below.

Reversed and rendered in part and affirmed in part.

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

† Writ of error pending in Supreme Court.