AMERICAN INDEMNITY CO. v. BOARD OF TRUSTEES OF ROBSTOWN INDEPENDENT SCHOOL DIST. (No. 5914.)

(Court of Civil Appeals of Texas. San Antonio. Jan. 2, 1918. Rehearing Denied Feb. 6, 1918.)

1. SCHOOLS AND SCHOOL DISTRICTS ⬤⟿81(2)—CONTRACTORS—BOND—NOTICE OF CONTRACTOR'S DEFAULT.

The mere failure on the part of school trustees to give the surety notice of the default in time of performance of the contractor to erect a school building, which the parties stipulated should work a forfeiture, was not sufficient to show waiver by the trustees of the contractor's duty to request, in writing, additional time for doing the work.

2. SCHOOLS AND SCHOOL DISTRICTS ⬤⟿81(2)—NOTICE TO SURETY OF DEFAULT OF CONTRACTOR—EVIDENCE.

In an action by school trustees against the surety on the bond of the contractor to erect a school building, evidence *held* insufficient to show actual notice to the surety through its local agent of the failure of the contractor to complete the building in time.

3. SCHOOLS AND SCHOOL DISTRICTS ⬤⟿81(2)—CONTRACTOR'S BOND—NOTICE OF DEFAULT.

If the local agent of the surety knew that the building was not completed by the contract date, the fact did not charge the surety with notice of the contractor's default, where, under the contract between the latter and the board of trustees of the school district, the time could have been extended without knowledge of the surety.

4. SCHOOLS AND SCHOOL DISTRICTS ⬤⟿81(2)—CONTRACTS — BOND — NOTICE OF DEFAULT —CONDITION PRECEDENT—CONSTRUCTION.

Though the bond given by the contractor did not specifically state that failure to give the surety notice of default as to time for completion as provided should release the surety, the provision as to notice created a condition, compliance with which was a necessary prerequisite to recovery on the bond; the language being that usually employed in drafting a condition precedent, the paragraph embracing all the obligations imposed on the trustees, and the intention clearly appearing from the entire instrument that the liability of the surety was conditioned on the performance by the trustees of the obligation as to notice imposed on them.

5. PRINCIPAL AND SURETY ⬤⟿123(3) — RELEASE OF SURETY—FAILURE TO GIVE NOTICE.

It is not Texas doctrine that a surety for hire is only released from the payment of damages for his principal's delay in completing the work by the owner's failure to give the notice of default required by the bond.

6. SCHOOLS AND SCHOOL DISTRICTS ⬤⟿81(2)—CONTRACTOR'S BOND—DEFAULT—NOTICE TO SURETY.

Where the surety on the bond of the contractor contracted with the board of school trustees for notice of the contractor's failure to complete the building in time, the effect to be given the breach by the school trustees was not dependent on the rights given the surety by the contract, and the question whether the surety would have derived benefit from such notice was not material.

7. SCHOOLS AND SCHOOL DISTRICTS ⬤⟿81(2)—CONTRACTOR'S BOND—NOTICE OF DEFAULT TO SURETY—ACTUAL NOTICE—EFFECT.

Though the surety had actual notice of the contractor's default as to time of completion, compliance with the provision of the bond requiring notice to the surety of such default, on which provision the liability of the surety was conditioned, was necessary.

Appeal from District Court, Nueces County; W. B. Hopkins, Judge.

Suit by the Board of Trustees of the Robstown Independent School District against C. D. Patterson and the American Indemnity Company. From a judgment for plaintiff, after dismissal as to Patterson, the indemnity company appeals. Judgment reversed, and judgment rendered for the Company.

Terry, Cavin & Mills, of Galveston, E. P. Scott, of Corpus Christi, and E. H. Cavin, of Galveston, for appellant. G. R. Scott, Boone & Pope, of Corpus Christi, for appellee.

MOURSUND, J. The board of trustees of the Robstown independent school district, in its corporate capacity, sued C. D. Patterson, as principal, and American Indemnity Company, as surety, upon a bond for the faithful performance of a contract between Patterson and said board of trustees to ʻerect a school building for said school district, which contract was breached by Patterson. The pleadings of the parties are lengthy, and their nature will be sufficiently disclosed in discussing the various assignments of error. The case was dismissed as to Patterson, and upon a trial without a jury judgment was rendered against the American Indemnity Company for $20,160.

The findings of fact and conclusions of law of the trial court are lengthy, and therefore, instead of copying the same in full, we will, as we dispose of the assignments of error, copy or state the substance of those to which the assignments relate.

The contract provided, in substance, that Patterson should, within six months from the date of the delivery to him of a certain $20,000 issue of Robstown independent school district bonds, erect a two-story brick building. The bonds were delivered to Patterson on the 7th or 8th of January, 1914. When Patterson abandoned the building in October, 1914, it was about 55 per cent. completed. The specifications for the construction of the building contained the following provision:

"The contractor shall be entitled to one day in addition to said stipulated time for each day's delay resulting from additional work or changes in work required from time to time or for specific delays from other causes, as may be approved by the architects or owners, which additional time must be stated by the contractor in writing within eight days of such delay, giving dates and causes, which if correct, shall be certified by the architect or owner. Should the contractor neglect to ask for additional time, within the time specified above, it is mutually agreed that no just claim exists or shall exist for an extension of time."

---

⬤⟿For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

No request by the contractor for additional time was made in the manner specified. The court's twentieth finding of fact reads:

"I find that due to weather and other conditions delays occurred in the progress of construction of said building, on account of which Patterson did not make, and the board of trustees did not require him to make, application in writing for additional time, as provided in said contract, but said board of trustees waived said requirement of said contract."

The indemnity bond contained the following provision:

"Provided, however, that in the event of any default on the part of said principal in the performance of any of the terms, covenants, or conditions of said contract, or in the event of any claim, demand, judgment, lien, cost, or fee being obtained or made against the said obligee, for or on account of the prosecution of the work as aforesaid, written notice thereof with a statement of the principal facts showing such claim, demand, judgment, lien, cost, or fee, and the date thereof, shall within thirty days after the same shall have come to the notice of the said obligee, be given to the American Indemnity Company at its office in the city of Galveston, Tex."

The first notice given by the board to the indemnity company consisted of a letter written by Mr. Herrington, superintendent of Robstown schools, dated October 1, 1914, calling attention to the fact that the contract required the completion of the building by the 7th day of July, 1914, and that the building was little more than half completed, and Patterson had practically quit work. The court's twenty-fourth, twenty-seventh, and thirty-third findings of fact are as follows:

"(24) I find that as soon as said board of trustees ascertained that said Patterson had abandoned said building, and within 30 days after said building had been so abandoned, said board of trustees in writing notified said American Indemnity Company that said building had been abandoned, and demanded that said American Indemnity Company perform said contract and complete and finish said building."

"(27) I find that defendant American Indemnity Company had notice that said school building was not completed, furnished, and equipped in accordance with said contract within the time stipulated in said contract."

"(33) I further find that there was no provision in the contract in this cause requiring 20 per cent. to be withheld by the board of trustees until the completion of said building, and that the bond sued on in this cause contained no such provision, and that the bond executed by the American Indemnity Company as surety did not provide that said American Indemnity Company should have the right, after default by Patterson, at its option, to assume or sublet said contract and to proceed thereunder as if no default or abandonment had occurred, and that said bond did not contain any provision, in case of default by Patterson, entitling the American Indemnity Company to subrogation, and that the bond contained no provision providing that failure to give notice of default should release the surety."

The court's sixth, seventh, and eighth conclusions of law are as follows:

"(6) I find that a failure to comply with that provision in the bond sued on as to notice would not release the surety from liability in the absence of a showing as to its materiality in the absence of a provision in the contract itself providing that the same should release the surety, or that the surety should have the right to enter upon and take possession of the material on the ground, and become subrogated to the rights of the principal."

"(7) I find that the defendant American Indemnity Company, the surety, had notice that the building was not completed within six months from the date of the delivery of the bonds to Patterson.

"(8) I find that notice of Patterson's default in the performance of his contract was given to the American Indemnity Company, the surety, in accordance with the contract."

The first eight assignments of error relate to the issue of notice, it being contended, with regard to questions of fact, that the court's findings of fact numbered 24, 27, and 33 are contrary to the great preponderance of the evidence, and that the evidence fails to show that notice as provided for in the bond was given by the trustees to the indemnity company of the default of Patterson in failing to complete the building within the time contracted for, and further that the evidence does not show that the company had actual notice of such default, and with regard to questions of law that the court's conclusions numbered 6, 7, and 8 are erroneous, and that in order for the trustees to recover it was incumbent upon them to allege and prove compliance on their part with the provision in the bond with respect to notice, regardless of whether or not the company had actual notice of the default.

[1] The twenty-fourth finding of fact is supported by the evidence, and so is the thirty-third, with the exception of the statement "that the bond contained no provision providing that failure to give notice of default should release the surety." The provision of the bond with respect to notice has been copied above, and its legal effect will be considered in the discussion of the questions of law. The court did not specifically find as a fact that notice of the default in completing the building within the time provided in the contract was given by the trustees within 30 days after such default. It is true that he found, and the finding is not challenged, that:

"Due weather and other conditions delays occurred in the progress of construction of said building, on account of which Patterson did not make, and the board of trustees did not require him to make, application in writing for additional time, as provided in said contract, but said board of trustees waived said requirement of said contract."

In view of this finding the court appears to have been of the opinion that notice given after the abandonment of the work was a compliance with the provision of the bond. Under the terms of the contract the time for completing the building expired on July 7th or 8th, that is, within six months after the delivery of the bonds to Patterson, and the failure to complete it within such time constituted default of which notice should have been given, unless the time was extended as provided by the contract. Herrington's letter was dated October 1st, and constituted

the only written notice to the company given by or in behalf of the trustees. If it be conceded that the time for completing the building could be extended in the manner found by the court, without releasing the surety, concerning which we have grave doubts, the fact remains that the court did not find that the extensions agreed upon were sufficient to show a compliance with the provision with respect to notice. The evidence adds nothing to the finding, in fact, there is no evidence that the board of trustees, or any official thereof, thereto authorized, ever undertook to waive the request in writing or to grant additional time. The mere failure to do the very thing which the parties stipulated should work a forfeiture is not sufficient to show waiver. Davis v. La Crosse Hospital Ass'n, 121 Wis. 579, 99 N. W. 351, 1 Ann. Cas. 950. We therefore conclude that the findings of fact fail to show a compliance by the trustees with the provision of the bond with respect to notice.

The court's twenty-seventh finding is to the effect that the indemnity company had notice of the default, presumably intending to find that it had knowledge thereof at the time of the default or within thirty days thereafter. There is no evidence to the effect that the indemnity company had actual notice of such default.

[2, 3] The court's twenty-second finding of fact is as follows:

"I find that at the time the bond executed by said Patterson, as principal, and American Indemnity Company, as surety, was executed, and during the time said Patterson was engaged in the construction of said building, said American Indemnity Company had an agent in the city of Corpus Christi, Nueces county, Tex., who represented said defendant in making said bond, and at the time said bond was executed said American Indemnity Company and said Patterson entered into an agreement whereby said Patterson was required to deposit in the First State Bank of Bishop, in the town of Bishop, Nueces county, Tex., for the purpose of paying for the lumber, labor, and other material used in and about the construction of said building, and the performance of said contract with said board of trustees, and that none of such funds should be withdrawn from said bank by said Patterson except by checks countersigned and approved by said agent of said American Indemnity Company, and I further find that pursuant to said agreement said Patterson deposited the proceeds of said bonds in said First State Bank of Bishop on or about the 24th day of January, A. D. 1914, and that thereafter from time to time drew checks on said funds which were honored and paid by said First State Bank of Bishop until all said funds were withdrawn out of said bank, and that each and all of said checks were so countersigned by the agent of said American Indemnity Company."

The correctness of this finding may be conceded, but there is no evidence that the funds were not all checked out prior to July 7, 1914; hence it cannot be said that Southgate knew the building was not completed. He did not reside in Robstown, and may have relied upon statements by Patterson and handled the matter negligently. The cashier of the bank did not furnish a list showing the dates and amounts of the various checks approved by the agent of the bonding company, nor did he state when the last of the funds derived from the bond sale were checked out. He stated that Patterson's account showed a balance of $8,175.59 on July 7th, but he also stated that Patterson deposited funds received for erecting a building at Bishop and checked against the account in payment for expenses incurred at Bishop as well as those for the Robstown building. The agent should doubtless have kept up with the progress of the work, but there is no evidence that he did, and therefore it cannot be said that the indemnity company had actual notice of the failure of Patterson to complete the building. But, if the agent knew that the building was not completed by July 7th, that fact would not charge the company with notice of Patterson's default; for under the contract the time could have been extended without the knowledge of the indemnity company. There is no evidence that the agent knew the time had not been extended.

[4] The seventh and eighth conclusions of law filed by the trial court are erroneous, in view of our conclusions with reference to the facts, and the judgment cannot be sustained unless the sixth conclusion of law is correct. While the bond does not contain the specific statement that the failure to give notice as therein provided shall release the surety, we think it is evident that the provision creates a condition, compliance with which is a necessary prerequisite to a recovery on the bond. The language is that usually employed in drafting a condition precedent; the paragraph embraces all the obligations imposed upon the trustees; and we think the intention clearly appears from the entire instrument that the liability of the indemnity company is conditioned upon the performance by the trustees of the obligations imposed upon them. In the case of Walsh v. Methodist Church, 173 S. W. 241, it was held that the surety company was released because the church did not give notice of the failure to complete the building in the time prescribed in the contract, but the court laid stress upon the fact that the bond gave the surety company the right to assume and sublet the contract and to receive all moneys which were to be paid to the contractor. In this case neither the bond nor the contract gave the indemnity company the right to sublet the contract, and the consideration was paid to Patterson in advance. We are therefore confronted with the question whether this difference in the contracts calls for the application of different rules of law. The appellees do not concede the correctness of the holding in the cited case in so far as the court held that the surety was entirely released, and contend that the failure to give notice should only be held to operate as a release from any claim for dam-

ages on account of delay. In support of this proposition, they cite cases from other states, while appellants cite a number of cases holding that the surety is entirely released. We find that the decisions vary as the conception of the status of sureties for hire varies. In a majority of the states it is held that the business of surety companies is essentially that of insurance, and that therefore their rights and liabilities under their contracts will be governed by the laws of insurance. See note to Hormel v. American Bonding Co., 33 L. R. A. (N. S.) 513. Practically all of these cases go back to cases decided by the Supreme Court of Washington for authority, and the substance of their holdings may be said to be that provisions similar to the one under consideration in this case will be treated as follows: (1) A failure to give notice of default in not completing the building within the prescribed time will release the surety from the payment of damages for delay; (2) the failure to give notice of default in paying debts for material, etc., will entirely release the surety. This holding, we think, is not supported by any satisfactory reason, and deprives the parties of the right to contract that the failure to give notice of one default (failure to complete in time agreed upon) shall have the same effect as failure to give notice of another default (the nonpayment of bills for material).

"Parties may think some matter which is apparently of very little importance essential, and if they sufficiently express an intention to make the literal fulfillment of such a thing a condition precedent, it will be one." Elliott on Contracts, § 1580.

See, also, section 2098.

"Where notice is stipulated for in the contract, failure to give such notice will discharge the guarantor altogether, and he may avail himself of this defense without showing himself damaged in any amount by not receiving notice. It is like any other conditional contract, and cannot be enforced except upon performance of the condition." Stearns on Suretyship, § 68; Brandt on Suretyship & Guaranty (3d Ed.) § 113, note 37.

"To the extent, and in the manner, and under the circumstances pointed out in his obligation he is bound, and no further." Miller v. Stewart, 9 Wheat. 680, 6 L. Ed. 189.

In Indiana the courts recognize a distinction in the construction of contracts of compensated sureties, as distinguished from voluntary sureties, and construe ambiguous language against the surety, but when a condition requiring notice of default is plainly expressed, or its meaning has been arrived at, they enforce the same just as strictly as if the contract had been that of a voluntary surety. Knight & Jillson v. Castle, 172 Ind. 97, 87 N. E. 976, 27 L. R. A. (N. S.) 573; Beech Grove Imp. Co. v. Title Guaranty Co., 50 Ind. App. 377, 98 N. E. 373; Wainwright Trust Co. v. U. S. Fidelity & G. Co. (Ind. App.) 114 N. E. 471. In the first-cited case the court said:

"This is a plain stipulation of the bond, and by it the liability of the guarantor is measured, and upon it he has a right to stand. It is not ambiguous or indefinite, and we have no right to say that the obligee or the gratuitous beneficiary did not thereby get all the protection either was entitled to expect; sic scripta est. Neither is it a question whether the condition is reasonable or unreasonable, so long as it is not fraudulent or unconscionable. Dobbin v. Bradley, 17 Wend. 422, where Bronson, J., speaking for the court, says: "The question is not whether the conditions by which he has thought proper to qualify his liability were either reasonable or unreasonable, nor whether they could in any way prove beneficial to the defendant. He had a right to judge of that matter for himself, and we have no authority to review his judgment.' "

The cases of National Surety Co. v. Long, 125 Fed. 887, 60 C. C. A. 623, and U. S. Fidelity & Guaranty Co. v. Rice, 148 Fed. 206, 78 C. C. A. 164, are cited and approved in the Indiana cases. In the Long Case the contention was made that a provision for notice was immaterial in view of the provisions of the building contract, and the court said:

"Moreover, it is not indispensable to the validity or to the enforcement of this plain covenant of the obligee—this condition precedent to the liability of the defendant under the bond—that the latter should either establish its beneficence or its materiality, or that it should show that it has sustained injury from the failure to fulfill it. Parties to agreements have the right and the power to contract that things immaterial as well as things material shall be the subjects of their warranties, or of conditions precedent to their respective liabilities, and their contracts in the one case are as legal and binding as in the other. The all-sufficient, the conclusive, answer to the suggestion that the subject of the warranty or of the condition precedent is immaterial, and its breach without effect, is that the parties had the right to agree and they have contracted otherwise. The immateriality of a warranty or of a condition precedent made by the agreement of the parties and the innocuousness of a failure to perform it do not nullify or mitigate the fatal effect of the failure prescribed by their contract."

[5, 6] Aside from the case of Walsh v. Methodist Church, supra, we find no Texas case in which provision in the bond requiring notice was considered, but we find that our Supreme Court in the case of Lonergan v. S. A. Trust Co., 101 Tex. 63, 104 S. W. 1061, 106 S. W. 876, 22 L. R. A. (N. S.) 364, 130 Am. St. Rep. 803, has criticized the Washington cases in which a distinction is made between compensated and voluntary sureties, and, in effect, held that the rule of strictissimi juris is applicable to suretyship for hire. This being the case, the doctrine that the surety is only released from the payment of damages for delay by the failure to give the notice required by the bond finds no support in our decisions, and we believe it cannot be sustained without making a different contract for the parties than the one expressed by their plain language. We are also of the opinion that the court's sixth conclusion of law is erroneous in holding that the effect to be given the breach by the trustees of the provision of the bond with respect to notice is dependent upon the rights given the indemnity company by the contract for the construction of the

building. The indemnity company considered notice of the default in failing to complete the building important to it, and contracted for it in identically the same language that it contracted for notice of the failure to pay bills. It is plain that it made the liability dependent on the compliance by the trustees with the provision. That it had the right to so contract, we think, is shown by the authorities quoted from, and the question of whether it would have derived benefits from the notice is not material. However, even though the building contract may not have been as favorable to the surety as those considered in other cases, the conclusion that the company would have derived no benefit from notice can rest only upon conjecture and speculation.

[7] We also hold that, even if the indemnity company had had actual notice of such default, the trustees would not be relieved from the duty of complying with the provision upon which the liability of the indemnity company was conditioned under the terms of the contract.

Our conclusions with respect to the question of notice require that the judgment be reversed, and judgment rendered in favor of appellant. It will therefore be unnecessary to consider any other assignments of error.

Reversed and rendered.