AMERICAN INDEMNITY CO. v. BOARD OF TRUSTEES OF ROBSTOWN INDEPENDENT SCHOOL DIST. (No. 5914.)

(Court of Civil Appeals of Texas. San Antonio. May 26, 1921.)

1. Schools and School districts ⊙⟶81(2)—Evidence in suit against contractor's surety held not to prove delay in construction of building was within provision of contract extending time.

In an action against contractor's surety for contractor's failure to construct building within the six months period specified in the contract, evidence *held* insufficient to prove that the period of delay fell within provision of the contract extending time for performance to the extent of delays occasioned by additional work or changes in work, or by causes not under the contractor's control.

2. Schools and school districts ⊙⟶81(2)—When contractor's surety shows absence of required notice of default, trustees must show failure to give notice excusable.

In an action against contractor's surety for failure to construct a building within the period specified, the burden was on the surety to show that written notice of default was not given it within 30 days after notice thereof came to the district trustees as provided by the bond; and, when this was shown, the burden shifted to the trustees to show that by reason of delays of such character as extended time for performance they were excused from giving the notice within the time specifically required.

3. Appeal and error ⊙⟶1010(1)—Finding not disturbed, where there is any evidence to support it.

A finding of fact by trial court must be given the same force and dignity as the finding of a jury on a given issue, and must not be disturbed, where there is any evidence to support it.

Appeal from District Court, Nueces County; B. D. Tarlton, Jr., Special Judge.

Suit by the Board of Trustees of Robstown Independent School District against C. D. Patterson and the American Indemnity Company. Judgment for plaintiff against the last-named defendant, and the latter appeals. Reversed and remanded, in conformity to opinion of Supreme Court in 228 S. W. 105.

Terry, Cavin & Mills, of Galveston, E. P. Scott, of Corpus Christi, and E. H. Cavin, of Brownwood, for appellant.

G. R. Scott and Boone & Pope, all of Corpus Christi, for appellee.

---

⊙⟶For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

SMITH, J. In an opinion delivered by this court on May 26, 1921, we reversed the judgment of the trial court, and here rendered judgment for appellant, the American Indemnity Company. Upon further consideration, however, we have concluded to withdraw that opinion, set aside the judgment, and substitute in lieu thereof the following:

The trustees of the Robstown Independent School District employed one Patterson to construct a school building at Robstown, to which end the parties entered into a written contract, to which were attached certain plans and specifications, and Patterson gave a bond for the faithful performance of his obligations. The American Indemnity Company became a surety on the bond. Patterson defaulted. The trustees sued him and his surety, and obtained judgment, from which the latter appealed to this court. The judgment of the court below in favor of the trustees was reversed, and here rendered for the surety company. 200 S. W. 592. On writ of error from the Supreme Court, this judgment was reversed by the Commission of Appeals, and remanded to this court for further consideration and disposition. 228 S. W. 105.

The contract in question provided, in effect, that Patterson should complete the building within six months from January 8, 1914, but that this period might be extended under certain conditions to be noted later. It was also provided that, in event Patterson defaulted in this and other specifically mentioned obligations, the trustees should give written notice of such default to the surety company within 30 days after notice thereof had come to the trustees. The 6 months period mentioned ended on July 8, 1914, but written notice was not given the surety company until October 1, 1914, or 84 days after the default.

Provisions were made in both the contract and the specifications for delays which would operate to extend the period within which the building should be completed, and such extension would in turn automatically extend the time within which the notice to the surety company should be given. If the delays contemplated in those provisions, when tacked onto the 6 months period, were sufficient to extend that period to within 30 days of October 1st, then the notice called for in the contract was given in due time; but if these delays were not sufficient for that purpose, then the notice was not given in time. The specifications contained this provision for delays:

"The contractor shall be entitled to one day in addition to said stipulated time, for each day's delay resulting from additional work or changes in work required from time to time, or for specific delays from other causes as may be approved by the architects or owners which additional time must be stated by the contractor in writing within eight days of such delay, giving dates and causes, which if correct, shall be certified by the architect or owner.

Should the contractor neglect to ask for additional time, within the time specified above, it is mutually agreed that no just claim exists, or shall exist, for an extension of time."

Section 9 of the contract contained the following provision for excusable delays:

"It is further agreed and understood by and between the parties hereto that the contractor shall not be held responsible for any delay in the completion of said school building beyond the time as specified in paragraph 1 hereof, by reason of fires, acts of Providence and other acts beyond the control of the said contractor."

The contract provided, as has been shown, that the building should be completed within a period of 6 months from January 8, and ending on July 8, but that this period should be automatically extended so as to embrace delays in the construction due to uncontrollable causes; That is to say, if, for example, the uncontrollable delays aggregated one month's time, then under the terms of the contract the contractor had until August 8 in which to complete the work, and before default occurred. The bond provided that the trustees should in writing give the surety notice of default within 30 days after notice of such default had come to the trustees; or, in other words, this 30-day period, within which the trustees were required to notify the surety, was not set in operation until the trustees themselves had obtained or received notice of the contractor's default. So that, if in the given case the trustees had no notice of the default until 30 days after it occurred, or until September 1, they would have until October 1 in which to give the written notice to the surety.

The record does not show that the trial court found when the default as contemplated in the contract occurred, nor when notice of such default came to the trustees. That court did find, in its twenty-fourth finding of fact, that as soon as the trustees ascertained that the contractor abandoned the building, and within 30 days after such abandonment, they gave written notice thereof to the surety, and the Commission of Appeals have held that the trial court thereby intended to find:

"The time excluded on account of delays brought the 6 months period allowed in which to complete the building to within 30 days of the written notice of abandonment."

The Commission of Appeals have also held that there are no allegations of any delay contemplated in the provisions of the specifications—that is, delays due to the acts of the parties—and that there were no statements in writing of such delays ever made and presented by the contractor to the trustees, as provided in the specifications. We understand the effect of these holdings to be that delays, if any, occasioned by the acts of the parties as contradistinguished from uncontrollable delays must be eliminated from consideration here, and that the only question remaining is: Would the delays due

to uncontrollable causes (such as are provided for in section 9 of the contract), when added to the original 6 months period, project the time allowed for the completion of the building to a date within 30 days of the giving of the written notice to the surety? Or, to reduce the question to its most concrete form: As the original 6 months period expired on July 8, and notice was given on October 1, 84 days later, leaving a hiatus of 54 days, was the aggregate of the time lost on account of uncontrollable delays sufficient to cover a period of 54 days? We take it that this is the principal, the controlling, question which the Commission of Appeals has relegated to this court for determination.

[1-3] We have very carefully considered all the evidence pointed out to us by both parties, and, going beyond that, have searched the record for all evidence bearing upon this question. There is evidence of delays, some of which may, or may not, have been occasioned by providential or other uncontrollable causes, while some of them are properly chargeable to such causes. There does not seem to have been any evidence introduced for the purpose of classifying these delays with reference to controllable or uncontrollable causes. Some were due to rains and inclement weather, but there was no sort of showing as to how much time was lost on account of either such delay, or all of them, and no facts were given by which such time might be computed even by inference. There was evidence, however, of one delay of 6 weeks' duration, due to the lack of certain material; but no effort was made to show whether this was chargeable to the carelessness of the contractor, or otherwise. But, assuming that this delay was unavoidable, it accounted, at the most, for only 42 days. There was no evidence of any other delay covering a specific, or even estimated, period of time. We have very carefully scrutinized the whole record, with the purpose of upholding the finding of the trial court, as construed by the Commission of Appeals, as it is our duty to do, if it can be done lawfully. But we have discovered no evidence upon which to uphold the finding that there were sufficient delays, whether controllable, as provided for in the specifications, or uncontrollable, as provided for in section 9 of the contract, to extend the 6 months period so as to project it to within 30 days of the giving of written notice to the surety.

Much has been said about the burden of proof, and where it rests in this case. We think the burden of proof rested upon the surety to show that the written notice was not given it within 30 days of the expiration of the 6 months period specifically provided for in bond. When this was shown, as was done here, the burden shifted to the trustees to show that by reason of delays of the character provided for in the contract and specifications they were excused from giving the notice within the period specifically required in the bond. Appellees did not meet this burden, and there was no testimony to support the twenty-fourth finding of fact as construed by the Commission of Appeals, and challenged by appellant's first assignment of error, which must be sustained. We understand, of course, that a finding of fact by a trial court must be given the same force and dignity as the finding of a jury upon a given issue, and must not be disturbed, where there is any evidence to support it. But in either case the finding must have some basis in the evidence.

The evidence here shows that the construction of appellees' building proceeded under many difficulties, and was subjected to many delays. The trustees were provident, and required the contractor to furnish a bond to secure the faithful performance of the obligations imposed upon him in the contract. It is obvious from the record that he failed in his undertaking, and the school funds furnished him for that purpose went for naught, so far as accomplishing that purpose was concerned. The contractor, in short, is in absolute default, and his sponsor, the surety company, ought not to be permitted to escape liability for the default, unless it is clearly entitled to such relief. It is true that, if the trustees disregarded the stipulation requiring them to give written notice to the surety within the period of time contemplated by the parties and expressed in the bond, then, of course, under the law the surety is absolved. The evidence upon this phase of the case is not satisfactory; it shows numerous delays from various causes, which may, or may not, have been of such nature and aggregate duration as to effect a compliance by the trustees with the requirement to put the surety upon the notice contemplated by the parties. It is obvious from the record, too, that the trustees, and the trial court as well, thought this showing sufficient in law, and it may be that this sense of security induced appellees to stop short of the maximum proof at their disposal. Accordingly, while we feel obliged to reverse the judgment of the court below, we feel none the less obliged to remand the cause to that court for another trial, in consonance with the opinions of the Commission of Appeals and of this court.

We think all other material matters in the case have been disposed of in the opinions of this and the Supreme Court, so that it is not necessary to discuss any other assignments of error not specifically mentioned. We ought to add, in view of another trial, that the fact of when notice of the contractor's default was brought home to the trustees should be developed. This fact is as important to the question of notice as the fact of the default itself.

For the reasons stated, the judgment is reversed, and the cause remanded for another trial.