## CITIZENS' GUARANTY STATE BANK OF HUTCHINS v. NATIONAL SURETY CO. (No. 8684.)

(Court of Civil Appeals of Texas. Dallas. May 20, 1922. Rehearing Denied June 17, 1922.)

1. Appeal and error ☾—1001(1)—Where evidence warrants submission of issues and sustains answers, appellate court is bound by verdict.

Where there is evidence warranting the submission of issues and sustaining the answers thereto, the appellate court is bound by the jury's disposition thereof.

2. Insurance ☾—430—No liability under bond indemnifying against cashier's embezzlement, where acts were directed or ratified by insured's directors.

Under a surety bond indemnifying a bank against loss from embezzlement by its cashier, the surety is not liable for loss resulting from acts done openly and without concealment under the direction or with the approval of the bank's officers and board of directors or ratified and confirmed by them without fraud or misrepresentation.

3. Insurance ☾—430—Surety not liable for losses from acts of bank cashier directed or ratified by board of directors, though ultra vires.

A surety company is not liable, under a bond indemnifying a bank against loss from embezzlement by its cashier, for loss resulting from acts authorized, ratified, or confirmed by the board of directors, though such transactions were ultra vires and beyond the scope of the directors' power to authorize and ratify.

4. Insurance ☾—539(5)—No recovery on indemnity bond where notice of loss was not given within time required.

Under an indemnity bond requiring that an insured give insurer notice of any loss within 90 days after knowledge thereof, a bank cannot recover on a bond indemnifying against embezzlement by its cashier, where no notice was given insurer until about 4½ months after insured learned the facts.

5. Insurance ☾—534—Statute invalidating stipulations requiring notice of claim within less than 90 days held inapplicable to contracts indemnifying against embezzlement by employees.

Vernon's Sayles' Ann. Civ. St. 1914, art. 5714, declaring invalid stipulations fixing the time within which notice of claims for damages shall be given at less than 90 days, is inapplicable to surety contracts indemnifying against embezzlement by employees; the statute being a restrictive one, and hence strictly construed.

Appeal from District Court, Dallas County; E. B. Muse, Judge.

Action by the Citizens' Guaranty State Bank of Hutchins against the National Surety Company. Judgment for defendant, and plaintiff appeals. Affirmed.

W. H. Graham, of Dallas, for appellant. Brooks, Worsham & Rollins, of Dallas, for appellee.

HAMILTON, J. Appellant, a banking corporation organized under the laws of Texas, seeks in this suit to recover $5,000 against appellee upon a surety bond in that sum executed by appellee to appellant against any loss by appellant on account of embezzlement, wrongful abstraction, or willful misapplication of money or other valuables by C. H. Bussey, Jr., appellant's cashier.

The cause of action alleged by appellant is pleaded at great length and in exhaustive detail.

However, the description of two transactions set out in the petition reflects the facts upon which liability in this appeal is sought to be grounded. These transactions are denominated by appellant as the "liberty bond transaction" and the "cotton transaction."

In connection with the liberty bond transaction appellant alleged that about October 1, 1919, it was the owner of certain liberty bonds of the United States government valued, approximately at $3,600, and that it had for safe-keeping certain other of such bonds belonging to its customers, its possession of which was such that it was bound and obligated to its customers, the owners of these bonds, to care for them and return them to said customers, or pay instead the value thereof, which was alleged to be $5,500.

It was alleged that the assistant cashier, C. H. Bussey, Jr., converted all of these bonds to his own use and benefit by hypothe-

cating them with the Security National Bank of Dallas, Tex., as collateral security for his note in the sum of $6,000. It was alleged that appellant was compelled to pay the Security National Bank of Dallas the sum of $6,000, being the amount of the indebtedness secured by the liberty bonds, in order to repossess them; their total value being $9,100 as alleged.

As a basis of recovery in connection with the "cotton transaction," it was alleged that on or about August 15, 1918, C. H. Bussey, Sr., and C. H. Bussey, Jr. (the former being the latter's father), were, respectively, cashier and assistant cashier of the bank.

It was further alleged that about this date these two officials of the bank entered into a conspiracy for the purpose of swindling and defrauding it by making unlawful use of the money then on deposit, and thereafter to come into possession of the bank; the unlawful use described being for the purpose of purchasing cotton during the season beginning in the fall of 1918 and extending over into 1919. It was alleged that they agreed to enter into the cotton business as partners to purchase cotton and cause the seller to draw sight drafts on C. H. Bussey, Sr., who, in turn, was to, and did, write his acceptance thereof across the face of such drafts, sign the acceptance in his own name, and deliver the drafts to the seller with instructions to take them to the bank and there receive pay from Chas. H. Bussey, Jr.

It was alleged that purchases were made and cotton paid for in this manner to an extent of approximately $31,000, and that a sum of money amounting approximately to this amount was paid on such drafts out of appellant's funds by C. H. Bussey, Jr., without lawful authority of any officer of the bank authorized to give consent, and that at the time such payments were made Bussey, Jr., had no funds on deposit to his credit in the bank, and that the bank was not indebted to him in any amount. It was also alleged that the cotton thus purchased was sold by the Busseys from time to time and the proceeds returned to the appellant bank, but that on or about November 7, 1918, the said Bussey, Sr., and Bussey, Jr., in order to obtain money for their own use and benefit, obtained a loan from Theo. Marcus & Co., of Dallas, Tex., and agreed to pledge 100 bales of cotton purchased with the bank's funds in the manner above stated as collateral security for the money so borrowed; that the cotton declined in price; that the said Bussey, Sr., and Bussey, Jr., were unable to repay the loan and obtain a release of the cotton, and, in such circumstances, authorized the bank to handle the matter for them, whereupon the bank, in turn, authorized Marcus & Co. to sell it for the best price obtainable and repay itself out of the proceeds of the sale; that on or about May 5, 1918, after such sale was made by Marcus & Co., it de-

ducted the amount of the indebtedness owing to it from the proceeds thereof and paid the balance, amounting to $2,201.03, to the bank, which left due the bank on this transaction $3,428.82.

The petition contained allegations to the effect that these transactions were consummated without the knowledge of the board of directors and governing body of the bank, and that they were not discovered for some time after they had been made; and it was also alleged, in effect, that the board of directors and those in authority never ratified or approved either of the transactions, and that such transactions, even if they could be construed as loans made by the bank, were unlawful, unauthorized, and ultra vires, because they exceeded the amount the banking laws of Texas authorize and permit to be made to any particular individual by a bank with a capital stock of the amount which that of appellant was at the time of the transactions.

Appellee answered by general and special exceptions, general denial, and by special pleas relating to the two particular transactions involved in this appeal.

It was pleaded that the alleged loss accruing from the liberty bond transaction did not render appellee liable because appellant, by an order of its board of directors, loaned the bonds to C. H. Bussey, Sr., and F. B. Bussey. It was also alleged that appellant's board of directors ratified and confirmed the loan of the liberty bonds and that appellant is estopped to assert as against appellee that the liberty bonds were converted. Appellee also pleaded that the note alleged by appellant to have been paid in order to redeem the bonds was not the note of C. H. Bussey, Jr., but was the note of C. H. Bussey & Co., and alleged that a portion of the liberty bonds redeemed by appellant by payment of the $6,000 note to the Security National Bank was the property of C. H. Bussey, Jr.; the amount of the bonds thus alleged to have been owned by C. H. Bussey, Jr., being $2,100.

With reference to the cotton transaction appellee answered that C. H. Bussey, Jr., had no interest in it, obtained no benefit from it, and that in paying bills of exchange for C. H. Bussey, Sr., he acted under the orders of superior officers of the bank by virtue of an order of the board of directors authorizing the payment of such bills of exchange. It was alleged that the bills of exchange were drawn and paid in the usual manner of handling cotton accounts by appellant; that appellant's board of directors had full knowledge of the cotton account, authorized it, ratified it, and confirmed it.

Appellee specially pleaded that the bond executed by it expressly provided that within 90 days after knowledge of any loss in respect to which liability against appellee might be claimed, notice thereof in writing should be given to appellee; that no such notice

was given appellee of any loss claimed by appellant within such time; and that for this reason no liability exists under the contract.

Upon the pleadings above stated pertaining to the liberty bond transaction and the cotton account transaction, and other similar allegations, the issue as to liability of appellee under the provisions of the bond was joined.

As the case is presented to us, its determination is controlled by the ascertainment of facts to be found from the evidence. The case was submitted to the jury upon special issues. Those issues by which the jury disposed of the two transactions by virtue of which appellant seeks to fix liability on this appeal were as follows:

"Did plaintiff bank on February 7, 1919, know about the loan of the liberty bonds to C. H. Bussey, Sr., and F. B. Bussey?" The jury answered: "Yes."

"Did the plaintiff on February 7, 1919, know that the cotton bills of exchange accepted by C. H. Bussey, Sr., had been paid out of its funds?" Answer: "Yes."

"When did plaintiff first give notice to appellee of any claim based on the conduct of C. H. Bussey, Jr.?" Answer: "June 17, 1919."

"Were $7,000 of the liberty bonds loaned by plaintiff to C. H. Bussey, Sr., and F. B. Bussey?" Answer: "Yes."

"Did the directors of plaintiff bank authorize the handling of the cotton transaction substantially in the manner such transactions were handled?" Answer: "Yes."

"Were the cotton transactions handled in the year 1917 in substantially the same manner as in 1918, and did the officers and directors of plaintiff's bank know of this?" Answer: "Yes."

[1] The record contains evidence which warranted the submission of each of these issues and which sustained the respective answers. Such being the case, we are bound by the disposition made of the issues by the jury.

[2] As above stated, the conditions of the bond were such that appellee was bound to indemnify appellant against loss only on account of embezzlement, wrongful abstraction, or willful misapplication of money or other valuables.

If the superior officers and board of directors of the bank directed C. H. Bussey, Jr., to do the acts of which complaint was made, or ratified and confirmed them as disclosed by appellee's pleadings and sustained by evidence in its behalf, then very clearly there could be no embezzlement or wrongful abstraction. He could not have embezzled the assets without fraudulently appropriating them to his own use. This he could not do in pursuit of directions expressed by the board of directors. We do not think he could have wrongfully abstracted the funds without secretly and dishonestly taking them and applying them to some unlawful use upon his own volition rather than in conformity with the orders or approval of the board. If he acted openly, under the direction or with the approval of the board of directors, there was no wrongful abstraction; neither was there any misappropriation if he acted with the approval of the board of directors or under their direction, or if he, openly and without concealment, made the transactions and, later, without fraud or misrepresentation, obtained the approval and confirmation of the board of directors of the bank. The effect of the findings above quoted is that he did not do any of the things against the doing of which he was underwritten in the bond executed by appellee to appellant.

[3] Appellant takes the position that even if the board of directors authorized, ratified, or confirmed the transaction relating to the liberty bonds or that designated as the "cotton transaction," yet appellee would be liable to appellant on the bond regardless of such authorization, ratification, or approval because the transactions were ultra vires and beyond the scope of the power of appellant's board of directors to authorize and ratify. This position, we think, is altogether unsound. If the transactions were actually authorized or approved by the board of directors, this seems to us to have made them the acts of appellant, itself, rather than of Bussey, its assistant cashier, who held an inferior position. If the transactions were invalid because they were ultra vires and in conflict with law, then they were the ultra vires and unlawful acts of appellant, committed by its board of directors, although in the commission of the acts the appellant employed appellee as an instrumentality or allowed him to act for it.

To give the bond the application contended for in this connection by appellant would be to give its terms a distorted and unreasonable effect which its provisions do not fairly embrace. The bond was executed to protect appellant against the wrongful acts committed by Bussey, Jr., independent of appellant's governing body, and not to hold appellant harmless against acts either of bad faith or of ignorance committed or approved by its governing authority. If appellant directed C. H. Bussey, Jr., to execute the transactions concerning which complaint is made before they were carried out, then originally they were appellant's own acts. On the other hand, if appellant ratified and confirmed them after they had been executed by C. H. Bussey, Jr., then such approval or confirmation made them appellant's acts and placed them beyond the scope of liability expressly contained in the provisions of the bond sued upon. U. S. Fidelity & Guaranty Co. v. Bank of Batesville, 87 Ark. 348, 112 S. W. 960.

[4] Furthermore, independent of whether or not Bussey was guilty of embezzlement, unlawful abstraction, or misappropriation of funds, we think that no liability can exist by

reason of appellant's failure to comply with that express provision of the bond requiring the giving of written notice within 90 days thereof by appellant to the Commissioner of Insurance and Banking of any loss concerning which liability against appellee was claimed.

The third section of the bond executed to appellant by appellee is as follows:

"That the bank shall, and the Commissioner of Insurance and Banking may, if he desires, give notice in writing to the company or to the nearest or any other convenient local agent of the company, within ninety days after knowledge thereof by the bank or the said Commissioner, of any loss in respect of which liability of the company is claimed, which shall have been committed during the employment of said officer and which shall have been discovered during such employment or before such time that the accounts of said officers shall have been settled or satisfied. Notice to the company by said Commissioner in the case of any loss or the furnishing of proof of such loss by the said Commissioner within the time specified therein, shall be the same as if given by the bank to the company, and the company shall be bound as if notice and proof were furnished by the bank."

According to the finding of the jury, which is sustained by the evidence and not contradicted by any testimony, it was about four and one half months after appellant acquired knowledge of the transactions upon which liability is predicated before any notice whatever was given appellee.

[5] Appellant contends that the above-copied section of the bond is void because it is in conflict with the provisions of article 5714, Vernon's Sayles' Revised Civil Statutes. Article 5714 provides that no stipulation of any contract requiring notice to be given of any claim for damages shall be valid unless the notice is reasonable, and it is enacted by the statute that any such stipulation fixing the time within which such notice shall be given at a less period than 90 days shall be void. This article has been held not to apply to a contract providing that a surety shall have notice of his principal's default. Walsh v. Methodist Episcopal Church (Tex. Civ. App.) 173 S. W. 241; Travelers' Ins. Co. v. Scott (Tex. Civ. App ) 218 S. W. 53. The statute, being a restrictive one in derogation of the common-law right to contract freely, is to be strictly construed, and, by the test of strict construction, it must be held as inapplicable to contracts of suretyship such as that upon which the right of recovery in this case is founded.

Believing that the judgment of the court is fully sustained by the evidence, and no harmful error appearing in the trial of the case below, we are of opinion that the judgment, should be affirmed, and, accordingly, it is so ordered.

Affirmed.