## CITIZENS' GUARANTY STATE BANK OF HUTCHINS v. NATIONAL SURETY CO.
### (No. 431–3861.)

(Commission of Appeals of Texas, Section B. Feb. 13, 1924.)

1. Statutes ⟨Key⟩236—Provision invalidating stipulations requiring notice of claim for damages within 90 days construed strictly against infringement of right to redress.

Rev. St. art. 5714, invalidating stipulations requiring notice of claims for damages, as conditions precedent to suits thereon, within less than 90 days, must be construed liberally in favor of the common right of redress, and strictly against contractual infringements thereof.

2. Insurance ⟨Key⟩612(2) — Statute invalidating stipulations requiring notice of claim within less than 90 days held applicable to surety companies.

Rev. St. art. 5714, invalidating stipulations requiring notice of claims for damages, as conditions precedent to suits thereon, within less than 90 days, applies to any sort of corporation, including surety companies.

3. Insurance ⟨Key⟩539(1)—Stipulation in fidelity bond for notice of loss within 90 days held invalid.

A stipulation in a fidelity bond for notice of loss "within 90 days after knowledge thereof by the bank or the said commissioner" of insurance and banking held a stipulation for notice within "a less period than ninety days," within the prohibition of Rev. St. art. 5714, though the actual period after the loss occurred might prove to be more than 90 days.

4. Insurance ⟨Key⟩612(2)—Notice of loss to surety held notice of "claim for damages" within statutory prohibition of stipulations for notice within less than 90 days; "claim."

A fidelity bond, requiring notice "of any loss in respect of which liability of the company is claimed" within 90 days after knowledge thereof by insured, held to require notice of a "claim for damages as a condition precedent to the right to sue thereon," within Rev. St. art. 5714, invalidating stipulations requiring such notice within less than 90 days; such article having to do with a claim in the sense of a "cause of action" for "damages," which includes the remedy on the bond (citing Words and Phrases, First Series, "Claim").

[Ed. Note.—For other definitions, see Words and Phrases, Second Series, Claim for Damages.]

5. Insurance ⟨Key⟩140—Fidelity bond held not entirely invalidated by void stipulation as to time for notice of loss.

Rev. St. art. 5714, invalidating stipulations requiring notice of claims for damages within less than 90 days, does not affect the substantial elements of the contract, but relates solely to its breach, and hence does not invalidate all of a fidelity bond containing such stipulation; the valid and invalid portions being readily separated.

6. Insurance ⟨Key⟩539(1)—Invalid stipulation in fidelity bond held not unassailable because of preparation of bond by insurance commissioner.

That the form of a fidelity bond containing an invalid stipulation as to the time for giving notice of loss was prepared by a former commissioner of insurance and banking does not render it unassailable, as the power to annul a statute cannot be delegated to such official.

7. Insurance ⟨Key⟩430—Surety on fidelity bond held not liable for acts not clearly chargeable to bank officer rather than bank.

The surety on a fidelity bond indemnifying a bank against losses from malfeasance of an officer held not liable for loss not clearly proved by the bank to have been chargeable to acts of the officer, in alleged violation of Vernon's Sayles' Ann. Civ. St. 1914, tit. 14 (articles

370–574), particularly articles 378a, 539, rather than of itself by authority of its board of directors.

Error to Court of Civil Appeals of Fifth Supreme Judicial District.

Action by the Citizens' Guaranty State Bank of Hutchins against the National Surety Company. Judgment for defendant affirmed (242 S. W. 488), and plaintiff brings error. Affirmed.

W. H. Graham, of Dallas, for plaintiff in error.

Brooks, Worsham & Rollins and A. S. Rollins, all of Dallas, for defendant in error.

STAYTON, J. Citizens' Guaranty State Bank of Hutchins brought this suit against the surety upon a fidelity bond, which undertook to indemnify the payee against losses arising from the malfeasance of one of its officers in the handling of money and securities. Judgment was in favor of the defendant, a surety company, in both the trial court and in the Court of Civil Appeals. 242 S. W. 488. One of the successful defenses was that the bank did not, within 90 days, give notice to the company of the losses for which suit was brought, in accordance with a certain clause of the bond, compliance with which, it avers, was a condition precedent to suit. The bank replies that under R. S. art. 5714, the notice clause was void. That clause was an agreement on the part of the obligee:

"That the bank shall, and the commissioner of insurance and banking may, if he desires, give notice in writing to the company or to the nearest or any other convenient local agent of the company, within 90 days after knowledge thereof by the bank or the said commissioner, of any loss in respect of which liability of the company is claimed, which shall have been committed during the employment of said officer, and which shall have been discovered during such employment or before such time that the accounts of said officer shall have been settled or satisfied."

The first part of R. S. art. 5714, invoked by the bank against this stipulation, may also be quoted:

"No stipulation in any contract requiring notice to be given of any claim for damages as a condition precedent to the right to sue thereon shall ever be valid, unless such stipulation is reasonable; and any such stipulation fixing the time within which such notice shall be given at a period less than 90 days shall be void. * * * *"

The latter part of the article denies validity to all provisions for notice in case of a claim for damages for, or on account of personal injuries received upon a railroad, etc. The contentions in behalf of the company's defense seem to be that the statute is not applicable to corporations of its character to notices required "within 90 days," to obligations upon fidelity bonds of the nature involved in this suit, nor to notice of "loss," which, it says, means "defalcation" of the employee, as distinguished from a "claim for damages." It also asserts that, if one part of the contract should be held void, the whole of it should be held void also.

[1-3] There is no longer any doubt that the article must be construed liberally in favor of the common right of redress and strictly against contractual infringements of that right, that it applies "generally" (that is, to any sort of corporation), and that a stipulation for notice "within 90 days" is "a less period than 90 days," within its prohibition. Taber v. Western Union Telegraph Co., 104. Tex. 272, 137 S. W. 106, 34 L. R. A. (N. S.) 185. This particular bond, however, reads: "Within 90 days after knowledge thereof by the bank or the said commissioner." The inquiry is raised as to whether, with the conditions affixed to the period, the provision calls for notice "at a less period than 90 days." For the actual period might work out to be more than 90 days. Thus the company might come into knowledge of its loss a number of days after the loss actually occurred or a number of days before the commissioner discovered it, and it might be contended that, under the exact wording of the bond, the period might, in such a case, be more than 90 days.

As to knowledge by the company, that is necessary to the reasonableness, and hence the validity, of any requirement for notice in a case of this nature (People's, etc., Ass'n v. Smith, 126 Pa. 317, 17 Atl. 605, 12 Am. St. Rep. 870; 25 Cyc. 1102), and, moreover, is necessary, actually or constructively, to the accrual of a cause of action (Moore v. Waco Bldg. Ass'n, 19 Tex. Civ. App. 68, 45 S. W. 974; 25 Cyc. 1184–1186), from the date of which the 90-day period, mentioned by the statute, must run (Taber v. Western, etc., Co., above cited). And as to knowledge by the commissioner, if the contract could be given the interpretation suggested, the construction would not only be strict in favor of the limitation, but would be strained and would infringe the spirit of the statute, which should, as already noted, be liberally enforced. The statute contemplates the "period"— not conditions affixed to the period, whereby the space of time may or may not develop to be longer than 90 days. The "period" must be reasonable, and it is unreasonable if less than 90 days is provided for. Thus, in the Taber Case, the period was stipulated for as beginning with the filing of the message. The day of the filing of the message might have been the same day as that upon which the cause of action accrued, and hence, it was argued, might have furnished a 90-day period. Nevertheless that consideration was rejected for its uncertainty, on grounds of public policy. The same principle applies here; otherwise, evasions of the reason of

the statute could soon completely destroy its force. A period of 80, 60, or 30 days, if annexed to a condition that was possibly capable of extending the time beyond 90, would meet the statute.

[4] The cited case is also helpful upon the next questions raised; that is, as to whether the notice of "loss" required by the bond is fairly within the phrase of the statute, and as to whether the obligation of the company to the bank was of such a nature as to give rise to "damages," within the meaning of the statute. A "claim" frequently means a cause of action. 2 Words and Phrases, 1204, 1205. As recognized in the Taber Case, and obviously by the statute itself, the article under consideration has to do with a claim in the sense of "cause of action" for damages, because it contemplates that the suit is to be brought "thereon."

The company contends that the bond in this case requires, as a condition precedent to suit, merely a notice "of any loss in respect of which liability of the company is claimed," and that this is less than notice of a "claim," or cause of action, for damages. It may be; but, if the force of the statute is to be avoided by requiring notice, not of the cause of action itself, but of necessary and component parts of the cause of action, its purpose can be too readily defeated. For instance, instead of using in a provision the exact words of the law, "notice * * * of * * * claim for damages," a surety company, assuming contractual liabilities and duties, might reach exactly the same result by stipulating either for "notice of defalcation" on the one hand, or for "notice of damage" on the other. Neither element would constitute the entire cause of action, but requiring notice of either would be as effective a limitation as requiring notice of the whole cause of action. The spirit of the statute is a liberal public policy, and excludes an evasion of that nature, however unconscious on the part of the company, and regardless of questions of expediency in a particular line of business. It does not permit a tendency to relaxation, but demands strict obedience. The cases of Walsh v. Methodist, etc., Church (Tex. Civ. App.) 173 S. W. 241, and American Indemnity Company v. Board of Trustees (Tex. Civ. App.) 200 S. W. 592, though not having adverted to considerations of this nature, seem to be in conflict with the above conclusion and with the Taber Case upon which it is based.

In certain bonds for indemnity in favor of an employer or the owner of premises against loss by reason of the liability imposed upon the principal by law for damages on account of personal injuries to employees or to the public, stipulations are found requiring that notice of an accident to an employee, or to a third person, be given to the surety at, or within, a stated time. The opinions in such cases seem to be that the stipulations for notice of "accident" are not within the statute under consideration. See Travelers' Ins. Co. v. Scott (Tex. Civ. App.) 218 S. W. 53, and cases following it. These cases are not thought to be at variance with this opinion. The cause of action—the claim for damages—contemplated by the statute never arises in them, unless not only an "accident" occurs, but also liability results, and the injured person, moreover, instead of disregarding the matter, as he may do, obtains damages or compensation from the principal for his injuries. In such an instance, the statute by a fair construction need not extend so far into past occurrences and relationships as the mere "accident." The intention of the statute may be reached by rejecting, as a prerequisite to recovery, notice of that which is related to a claim for damages by the insured against the insurer. A mere possibility more remote than a separate and previous cause of action—a claim against the insured by a third person—is not reasonably within the statute.

The word "damages," as used in the statute, it may be fairly said, includes the remedy upon this bond. The bond is in the penal sum of $5,000, but the obligation of the company is for the loss to the bank, whether as to money or as to securities embezzled, etc., which may amount to less than $5,000, but may not be the subject of indemnity if more. The recovery upon a bond of this nature is not for the penalty, but for "damages." 1 Pomeroy, Eq. Jur. 381; Simkins on Equity, 631; 4 R. C. L. 68, 69; 9 C. J. 128, 129; Maryland Casualty Co. v. Hudgins (Tex. Civ. App.) 72 S. W. 1047.

[5] The final contention, made upon the basis of the clause requiring notice, is that, if one part of the contract be excluded as illegal, the whole of it should fail. The statute does not declare the whole contract invalid, but merely a particular "stipulation" of it, and it necessarily implies that the rest of the agreement shall remain a contract. Otherwise, the statute would effect the unreasonable end of destroying the very subject-matter that it intends, on grounds of public policy, to protect. The parties to this suit must be presumed to have known this when they entered into the transaction. The statute does not "affect the substantial elements of the contract itself," but relates "solely to its breach." Armstrong v. G. H. & S. A. Ry. Co., 92 Tex. 117, 46 S. W. 33. The valid and invalid portions of the contract are readily separated, and the valid portion should be enforced. 26 C. J. 65.

[6] A suggestion is made that the former commissioner of insurance and banking provided the form of this bond and that it is therefore unassailable. The record does not show who prepared the bond, and, even were the point presented here, it would seem to be entirely untenable upon the ground that the power to annul a statute cannot be delegated

to such an official. 6 R. C. L. 165, 166; 14 R. C. L. 859, 860; 12 C. J. 850.

[7] For the reasons discussed, the judg-. ments below do not appear sustainable upon the basis of R. S. art. 5714. They do, however, appear to be supported upon another ground. The bank alleged that the bond was an obligation of indemnity against loss sustained by reason of money or securities "embezzled, wrongfully abstracted or willfully misapplied by said officer," and that the obligation became due by reason of that officer's having, without authority from the board of directors, pledged certain United States bonds upon the personal note of himself and another to a Dallas association, and by his having further, and without that authority, paid out a large amount of money on drafts drawn by his father for funds with which to purchase cotton. There was also allegation that, if any authority was given by the board of directors, it was illegal and not binding upon the bank, because not the act of at least a quorum of the directors, and because the advances, added to previous loans to this officer, were above 25 per cent. of the capital and surplus of the bank. The theory of the attack here is upon the basis of the part of title 14 of the Revised Civil Statutes pertaining to state banks, and particularly articles 378a and 539 of that title. It will not be required that this point be passed upon. Though it were assumed to be correct, still the burden of proof in these re; spects would have been upon the plaintiff. United States v. Britton, 108 U. S. 199, 2 Sup. Ct. 531, 27 L. Ed. 698; 3 Michie on Banks and Banking, 1936; National Surety Co. v. Atascosa Ice, etc., Co. (Tex. Civ. App.) 222 S. W. 605; United States, etc., Co. v. Bank of Batesville, 87 Ark. 348, 112 S. W. 958.

The amount of capital was shown, but not the amount of surplus. The bond covered acts of the officer and not acts of the bank. There was testimony that the officer's acts were innocent and designed for the good of the bank. There was testimony tending to show that he proceeded in obedience to the orders of the board of directors, made in good faith. But, aside from that, there was no conclusive showing that the acts were those of the officer, as distinguished from those of the bank, nor that authorization by the board of directors at a regular meeting was absent from the record of the minutes as originally entered. There was undisputed testimony that in some way, not apparently attributable to the fault of this officer, some parts of the minutes had been removed before the trial. The book came from the custody of the bank and was exhibited in open court. Since the burden was upon the bank to prove that its pecuniary loss was chargeable to acts of the officer, and not to its own acts, since it cannot be said undoubtedly to have made that proof, and since the judgments below were against it, there is no ground at this time to disturb the decision of the Court of Civil Appeals, notwithstanding that its holding upon the question of notice is considered here to be erroneous.

We recommend that the judgments of the. district court and of the Court of Civil Appeals be affirmed.

CURETON, C. J. The judgment recommended in the report of the Commission of Appeals is adopted, and will be entered as the judgment of the Supreme Court.