Albert S. KOMATSU, Appellant,

v.

UNITED STATES FIRE INSURANCE COMPANY, Westchester Fire Insurance Company, and U.S. Insurance Group, Appellees.

No. 2–90–087–CV.

Court of Appeals of Texas, Fort Worth.

April 24, 1991.

On Rehearing April 24, 1991.

Law, Snakard & Gambill, and George Parker Young, Mark S. Pfeiffer, Fort Worth, for appellant.

Cantey & Hanger, and Evelyn R. Leopold, Fort Worth, for appellees.

Before WEAVER, C.J., and MEYERS and DAY, JJ.

## OPINION ON REHEARING

DAY, Justice.

Upon consideration of appellant's motion for rehearing we find that our opinion of March 13, 1991, in this cause erroneously failed to register the dissent without opinion of Chief Justice Weaver. We withdraw our original opinion, deny appellant's motion and substitute the following as our opinion.

Komatsu appeals from a summary judgment granted to the appellee insurance companies, herein "Fire," and the denial of his motion for summary judgment. In this case of first impression the issue before this court is whether the ninety-day minimum notice requirement of section 16.071 of the Texas Civil Practice and Remedies Code applies to a "claims-made" malpractice insurance policy. We hold that it does not apply and we affirm.

In 1984, First State Bank of Celina filed suit against Komatsu and his attorney, Murad, as guarantors on various loans seeking recovery of $90,010 plus interest. On February 28, 1985, Komatsu filed a cross-claim against his attorney, Murad, alleging that Murad had fraudulently induced Komatsu to become a guarantor on the loans. Murad and Komatsu settled Komatsu's cross-claim by an agreed judgment against Murad for $1,155,042.91. The agreed judgment recited that Murad's professional negligence had proximately caused Komatsu's damages. At the same time the agreed judgment was entered, Murad assigned his rights under Fire's "claims-made" malpractice insurance policy to Komatsu. Komatsu instituted this suit seeking payment of the agreed malpractice judgment from Fire.

Murad's policy with Fire expired on February 28, 1985, the day that Komatsu filed his cross-claim against Murad. The policy provided coverage for claims made against Murad during the policy period and *reported to the company during the policy period.* Neither party disputes the fact that Murad did not notify Fire of Komatsu's cross-claim until March 5, 1985, five days after the policy had expired. As the assignee of Murad's rights under the policy, Komatsu filed the instant suit against Fire to collect the agreed judgment he had obtained against Murad. Komatsu moved for partial summary judgment contending that the provision of the policy providing coverage only for claims that were reported to Fire during the term of the policy was unenforceable under section 16.071 of the Texas Civil Practice and Remedies Code. Fire moved for summary judgment, contending that section 16.071 was not applicable to a claims-made policy and that no coverage ever existed under the policy since Murad had failed to notify Fire of the claim prior to the expiration of the policy period. The trial court denied Komatsu's motion and granted summary judgment for Fire.

TEX.CIV.PRAC. & REM.CODE ANN. sec. 16.071 (Vernon 1986) provides, in pertinent part, as follows:

(a) A contract stipulation that requires a claimant to give *notice of a claim for damages* as a condition precedent to the right to sue on the contract is not valid unless the stipulation is reasonable. A stipulation that requires notification within less than 90 days is void.

*Id.* (emphasis added).

Fire relies on the following paragraphs in its policy as the basis for denying coverage:

I. Coverage

To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as money damages because of any claim or claims first made against the insured *and reported to the Company during the policy period....*

....

IV. Policy Period and Territory

A claim is first made during the policy period or extended reporting period if:

a) *during the policy period* or extended reporting period the insured shall have knowledge or become aware of any act or omission which could reasonably be expected to give rise to a claim under this policy and *shall during the policy period or extended reporting period give written notice thereof....*

....

A claim shall be considered to be first made when the Company *first receives notice of the claim or of an event which could reasonably be expected to give rise to a claim.* [Emphasis added.]

Komatsu concedes that the policy language is clear and unambiguous with reference to what coverage the policy provides but argues that the enforcement of such language would contravene the ninety-day minimum notice requirement of section 16.-071. Komatsu contends that since the policy clearly required Murad to *notify Fire of the claim during the policy period* as a condition precedent to coverage, the policy afforded Murad less than the minimum ninety-day notice provided in section 16.-071. Komatsu urges that we disregard the clear and explicit coverage terms of the policy and hold that Murad should have

been given ninety days after the making of Komatsu's claim within which to notify Fire and thereby secure coverage.

The policy in issue is a "claims-made" policy similar to the one before us in *Yancey v. Floyd West & Co.*, 755 S.W.2d 914 (Tex.App.—Fort Worth 1988, writ denied), where we held that coverage extended to only those claims which were reported to the company during the term of the policy. *Id.* at 921. There we wrote at length on the public policy considerations favoring "claims-made" insurance policies. *Id.* at 923–25. The applicability of section 16.071 was *not* an issue in *Yancey.*

Komatsu cites *Citizens' Guar. State Bank v. National Sur. Co.*, 258 S.W. 468 (Tex.Comm'n App.1924, judgm't adopted) as authority to hold that section 16.071 should be applied to the policy in issue. In *Citizens'*, the bank had obtained a fidelity bond which covered defalcations by its employees. The policy language required the bank to give written notice of loss *within* ninety days of the bank's discovery of the loss. The bank contended that the less than ninety-day provision was unenforceable since it contravened former TEX.REV. CIV.STAT.ANN. art. 5714 (the predecessor to section 16.071). *Citizens'* held that the statutory language *"claim for damages"* simply meant *"cause of action." Citizens'*, 258 S.W. at 470. The court reasoned that the employee's defalcation created a *cause of action* in the bank's behalf against the insurance company and to require the bank to give notice to the surety company of *its cause of action* in less than ninety days as a condition precedent to suit would clearly violate the statute.

In its opinion, the *Citizens'* court relied upon *Taber v. Western Union Tel. Co.*, 104 Tex. 272, 137 S.W. 106 (Tex.1911). In *Taber*, the contract between the telegraph company and the sender required the sender to give notice of his *claim for damages* within ninety days of the time the sender filed the message with the company for transmission. *Taber* had discussed the applicability of article 3379 (an earlier predecessor to section 16.071) and held:

[W]e are of the opinion the 90–day period should be computed from the time the *cause of action* arose, and that such period was intended by the Legislature to be designated. The purpose of the act was to fix a minimum period of 90 days from the time the *cause of action* arose, in which notice of any claim for damages might be required by stipulation, as a condition precedent to the right to sue....

*Id.,* 137 S.W. at 108 (emphasis added).

In *Travelers' Ins. Co. v. Scott,* 218 S.W. 53 (Tex.Civ.App.—Fort Worth 1919, writ ref'd), Travelers' had issued a liability policy to Scott which indemnified Scott against claims made by third parties. The policy contained a provision requiring immediate notice to Travelers' of accidents to third parties. In finding the predecessor to section 16.071 to be inapplicable, the Fort Worth court wrote:

We very gravely doubt the application of this statute to the particular question before us. It is evident that the statute is restrictive and in derogation of the common-law right to freely contract, and therefore, under well-settled rules, to be construed strictly. So construing the statute, it is to be noted that the stipulation to which the statute is directed relates to "any *claim for damages,*" and makes no direct reference to the question of requiring notice of an "accident."

....

As between Scott [the insured] and the company there could be no *claim of damages* within the meaning of article 5714 of the statutes, which we quoted, upon the mere happening of the accident to Mrs. Shine [the claimant]. Nor would such liability on the part of the company under the policy arise upon the making of the *claim for damages by Mrs. Shine against Scott.* So that, as stated before, we gravely doubt whether the statute invoked has application to the particular question now before us.

*Id.* at 57 (emphasis added).

In *Citizens',* the surety company argued that the holdings in public liability cases such as *Scott* should be dispositive of the bank's contention that the statute was applicable. In distinguishing public liability cases, the *Citizens'* court wrote:

In certain bonds for indemnity in favor of an employer or the owner of premises against loss by reason of the liability imposed upon the principal by law for damages on account of personal injuries to employees or to the public, stipulations are found requiring that notice of an accident to an employee, or to a third person, be given to the surety at, or within, a stated time. The opinions in such cases seem to be that the stipulations for notice of "accident" are *not within the statute* under consideration. [Citation omitted.] These cases are not thought to be at variance with this opinion. The *cause of action—the claim for damages*— contemplated by the statute never arises in them, *unless* not only an "accident" occurs, but also liability results, and the injured person, moreover, instead of disregarding the matter, as he may do, obtains damages or compensation from the principal for his injuries. In such an instance, the statute by a fair construction need not extend so far into past occurrences and relationships as the mere "accident." The intention of the statute may be reached by rejecting, as a prerequisite to recovery, *notice of that which is related to a claim for damages by the insured against the insurer. A mere possibility more remote than a separate and previous cause of action—a claim against the insured by a third person—is not reasonably within the statute.*

*Citizens',* 258 S.W. at 470 (emphasis added).

It is abundantly clear that *Citizens'* construed the statutory language *"claim for damages"* to mean *"cause of action"* and properly held that the "loss" sustained by the defalcation of the bank's employee gave rise to a *cause of action* on behalf of the bank against the surety company. Since the indemnity policy required that notice of such "loss" (the bank's *cause of action against the surety company* ) be given in less than ninety days as a condi-

tion precedent to the right to sue, such requirement was clearly violative of the predecessor statute of section 16.071. To have enforced the policy provision requiring the bank to give notice of its *cause of action* in *less* than ninety days as a condition precedent to suit would have defeated the bank's *cause of action* that had accrued upon discovery of the loss. In the language quoted above from *Citizens'*, the court clearly distinguished its holding from the previous holdings (such as *Scott*) in third party liability cases and stated that its holding was not inconsistent with such cases.

*Citizens'* and *Scott* simply hold that the statute prohibits a contracting party from defeating the other party's *cause of action* by contractually providing that notice of such *cause of action* must be given to the other in a period of less than ninety days as a condition precedent to suit on such cause of action. In determining the applicability of section 16.071 to the policy in the instant case, we will examine its facts in light of *Citizens'* and *Scott.*

Murad's policy with Fire did not provide for any specific limitation period in which Murad was required to give notice to Fire. The policy simply provided that coverage would be provided only for *claims* that were reported to the company during the effective policy period. When Murad learned of Komatsu's *claim*, no *cause of action* against Fire accrued to Murad. The *"making of the claim"* against the insured by the injured party in *Scott* did not give rise to a *claim for damages on behalf of the insured against the insurance company.* Here, Komatsu's claim against Murad did not give rise to a *claim for damages in* Murad's behalf against Fire. Therefore, the coverage provision of Fire's policy requiring that claims be reported to the company during the effective period of the policy could not operate to defeat any *claim for damages* against Fire since Murad had no *claim for damages* against Fire.

Komatsu has provided us with a legislative history of section 16.071 dating from the turn of the century and argues that the section was intended to apply to *all* contracts. We disagree. It is clear that section 16.071 was enacted to prohibit one contracting party from using a notice provision of less than ninety days to defeat a *claim for damages, i.e., a cause of action* that had accrued to the other party. Komatsu's claim against Murad did not give rise to a *claim for damages* by Murad against Fire. The notice he was required to give Fire was notice of the claim made against him, not of a *claim for damages* against Fire, since no such *claim for damages* against Fire had accrued.

In so holding, we acknowledge the importance of claims-made policies and the necessity of exempting such policies from the purview of section 16.071. Because the notice periods in claims-made policies are exact, insurers can more exactly predict their future costs. The absence of a policy extension or "tail" period in claims-made policies makes such policies affordable and thus more readily available to the public. Were we to adopt Komatsu's position, we would be retroactively amending every claims-made policy in Texas. That would have consequences far beyond this case. *See Calcasieu–Maine Nat'l Bank v. American Employers' Ins. Co.,* 533 F.2d 290, 295 (5th Cir.), *cert. denied,* 429 U.S. 922, 97 S.Ct. 319, 50 L.Ed.2d 289 (1976) (courts should not strain to find ambiguity of unambiguous contract if, in so doing, they defeat the probable intentions of the parties, even when the result is an apparently harsh consequence to the insured). Extension of the notice period in a claims-made policy constitutes an unbargained for expansion of coverage.

We hold that the trial court acted properly in granting Fire's motion for summary judgment and denying Komatsu's motion for partial summary judgment. Komatsu's two points of error are overruled.

The judgment of the trial court is affirmed.

WEAVER, C.J., dissents.