**Revised May 14, 1999**

**UNITED STATES COURT OF APPEALS**
**FIFTH CIRCUIT**

_____

No. 98-10289
_____

MATADOR PETROLEUM CORPORATION,

Plaintiff–Appellant,

versus

ST PAUL SURPLUS LINES INSURANCE COMPANY,

Defendant–Appellee.

Appeal from the United States District Court
for the Northern District of Texas

May 12, 1999

Before JONES, SMITH, and EMILIO M. GARZA, Circuit Judges.

EMILIO M. GARZA, Circuit Judge:

Matador Petroleum Corporation ("Matador") appeals the district court's grant of summary

judgment in favor of St. Paul Surplus Lines Insurance Company ("St. Paul"). Matador contends that

St. Paul wrongfully denied coverage under an insurance policy. We affirm.

I

St. Paul provided Matador with insurance coverage pursuant to an oil and gas commercial

general liability policy.  Under the terms of the policy, St. Paul agreed to defend and indemnify Matador against liability for "bodily injury" and "property damage" caused by an "accident, including continuous or repeated exposure to substantially the same general harmful conditions."  The policy also contained an absolute pollution exclusion clause, which provided:

> We won't cover injury or damage . . . that result[s] from pollution at or from any:
> • protected person's premises;
> • waste site;
> • protected person's work site;
> • offshore site;
> • of your products;  or
> • of your completed works.
> Nor will we cover any injury or damage that results from pollution involving any waste pollution.

The policy defined "pollution" as "any actual, alleged or threatened discharge, dispersal, escape, migration, release or seepage of any pollutant."

In conjunction with this basic insurance policy, Matador purchased from St. Paul an endorsement that provided a narrow exception to the absolute pollution exclusion.  The endorsement stated that St. Paul would not apply the pollution exclusion in the event of a "covered pollution incident."  The endorsement defined "covered pollution incident" as:

> the discharge, dispersal, release, or escape of pollutants that:
> • Results from an event;
> • Begins and ends within 72 hours, and does not result from a well out of control;  or results from a well out of control above the surface of the ground or waterbottom;
> • Is known to you or your operating partner within 7 days of its beginning;  and
> • Is reported to the company within 30 days of its beginning.

On or about March 29, 1994, a drilling pit collapsed in a well owned in part by Matador.  The collapse of the pit caused a discharge of pollutants, which seeped onto adjacent property and waterways.  Matador reported the incident to St. Paul's agent on May 6, 1994—thirty-eight days

-2-

after the pollution incident occurred—and requested coverage under the policy for damages claimed by landowners adjacent to the drilling pit. After investigating Matador's claim, St. Paul declined the request for coverage, and informed Matador that St. Paul would not provide it with a defense or indemnity. Matador filed suit in Texas state court seeking damages for expenses incurred in defending against the claims asserted by the adjacent landowners. St. Paul then removed the case to federal district court on the basis of diversity jurisdiction.

St. Paul argued before the district court that it properly denied coverage to Matador because Matador failed to report the pollution incident within thirty days as required by the endorsement. The district court agreed and granted St. Paul summary judgment. Matador timely appealed.

II

We review the district court's grant of summary judgment *de novo*. *See American Guarantee Liability Ins. Co. v. The 1906 Co.*, 129 F.3d 802, 805 (5th Cir. 1997). We sit as an *Erie* court, and therefore, we must attempt "to rule the way the Texas Supreme Court would rule on the issue[s] presented." *Hanson Prod. Co. v. Americas Ins. Co.*, 108 F.3d 627, 629 (5th Cir. 1997). Matador raises three principal issues on appeal.

A

Matador first argues that the district court erroneously granted St. Paul summary judgment because the endorsement to the insurance policy is ambiguous. The endorsement obligated St. Paul to provide insurance coverage for a pollution incident only if the incident was "reported to the company within 30 days of its beginning." Matador contends that this provision is ambiguous because "the company" could refer to either St. Paul or Matador. According to Matador, because the provision is ambiguous, we must construe the provision in its favor; in other words, we must

-3-

interpret "the company" to mean Matador. Matador had notice of the incident within thirty days after the incident began, and therefore, in Matador's opinion, it complied with the terms of the endorsement.

Texas law controls our interpretation of St. Paul's insurance policy. *See Canutillo Indep. Sch. Dist. v. National Union Fire Ins. Co.*, 99 F.3d 695, 700 (5th Cir. 1996) (citing TEX. INS. CODE ANN. art. 21.42 (West 1981)). Under Texas law, the same rules that apply to contracts in general govern the interpretation of insurance contracts. *See National Union Fire Ins. Co. v. CBI Indus., Inc.*, 907 S.W.2d 517, 520 (Tex. 1995).

When interpreting a contract, our primary concern "is to ascertain and to give effect to the intentions of the parties as expressed in the instrument." *R & P Enter. v. LaGuarta, Garvel & Kirk, Inc.*, 596 S.W.2d 517, 518 (Tex. 1980). To achieve this objective, we consider the contract as a whole. *See Forbau v. Aetna Life Ins. Co.*, 876 S.W.2d 132, 133 (Tex. 1994) ("This court is bound to read all parts of a contract together to ascertain the agreement of the parties. The contract must be considered as a whole . . . [and] each part of the contract should be given effect."). When considered as a whole, a contract is ambiguous only if "it is reasonably susceptible to more than one meaning." *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983). As Texas courts have recognized, "not every difference in the interpretation of a contract or an insurance policy amounts to an ambiguity." *Forbau*, 876 S.W.2d at 134. We will not find a contract ambiguous if we may properly give it a certain legal meaning or interpretation. *See CBI Indus.*, 907 S.W.2d at 520. Although we will construe ambiguities in an insurance contract against the insurer and in favor of coverage, *see National Union Fire Ins. Co. v. Hudson*, 811 S.W.2d 552, 555 (Tex. 1991), we will not "'strain to find such ambiguities, if, in so doing, [we] defeat the probable intentions of the parties.'" *Sharp v.*

-4-

*Federal Sav. & Loan Ins. Corp.*, 858 F.2d 1042, 1045 (5th Cir. 1988) (quoting *Calcasieu-Marine Nat'l Bank v. American Employers' Ins. Co.*, 533 F.2d 290, 296 (5th Cir. 1976)); *see also Yancey v. Floyd West & Co.*, 755 S.W.2d 914, 918 (Tex. App.—Fort Worth 1988, writ denied).

Examining the policy as a whole shows that the reading espoused by Matador entails an awkward and unreasonable interpretation of the endorsement. Under the endorsement, a pollution incident is covered only if the incident:

- Is known to you or your operating partner within 7 days of its beginning; and
- Is reported to the company within 30 days of its beginning.

Neither party disputes that "you," as used in the seven-day notice provision, refers to Matador. Thus, we may infer that "the company" does not refer to Matador. Had the parties intended to require that Matador also receive notice within thirty days, the policy reasonably would read: "Is reported to *you* within 30 days of its beginning. *Cf. Mississippi Poultry Assoc. v. Madigan*, 992 F.2d 1359, 1363 (5th Cir. 1993) (noting that "[t]he use of different words or terms within a statute indicates that Congress intended to establish a different meaning for those words"). Moreover, Matador's suggested interpretation makes the thirty-day reporting requirement potentially superfluous. The endorsement's use of the conjunction "and" indicates that, to obtain coverage, the insured must satisfy the requirements of both the seven-day notice provision and the thirty-day reporting provision. If Matador knows of a pollution incident within seven days, however, it makes little sense for the endorsement to require that Matador also have the incident reported to it within thirty days. *See Fort Worth Lloyds Ins. Co. v. Willham*, 406 S.W.2d 76, 79 (Tex. Civ. App.—Amarillo 1966, writ ref'd n.r.e.) (stating that "courts are without authority to needlessly reject any words or terms used in contracts by the parties or delete any clause therein as surplusage, unless such action is judicially

mandatory"). Finally, the use of the word "reported" denotes that "the company" refers to St. Paul and not to Matador. Other part s of the insurance policy use derivatives of the word "report" specifically in reference to giving notice to the insurer. For example, the basic insurance policy provides that, for an additional premium, Matador may obtain an "Extended Reporting Period Endorsement." *See*, *e.g.*, *National Ropes v. National Diving Serv., Inc.*, 513 F.2d 53, 58 (5th Cir. 1975) (noting that "[i]t is logical to assume that . . . words [used in different clauses of the contract] were intended to convey the same meaning both times they were used"). *Cf. Sullivan v. Stroop*, 496 U.S. 478, 484, 110 S. Ct. 2499, 2504, 110 L. Ed. 2d 438, __ (1990) (espousing "normal rule of statutory construction" that "identical words used in different parts of the same act are intended to have the same meaning").

Thus, we agree with the district court that the endorsement's language has a certain meaning and is not "reasonably susceptible" to more than one interpretation. *Coker*, 650 S.W.2d at 393. Read as a whole, the policy unambiguously shows that Matador and St. Paul intended "the company" to mean the insurer and not the insured. The contrary interpretation espoused by Matador strains the language of the endorsement and creates ambiguity where none exists. Under the plain language of the endorsement, St. Paul legitimately denied Matador coverage.[1]

---

[1] Matador argues that evidence discovered after the district court granted summary judgment establishes that the language of the endorsement is ambiguous. It contends that the district court abused its discretion when it refused to consider the additional evidence in support of Matador's Motion For Reconsideration. *See* FED. R. CIV. P. 59(e). Matador, however, has not demonstrated why the evidence it relies upon qualifies as "newly discovered evidence." *See Becerra v. Asher*, 105 F.3d 1042, 1047 n.20 (5th Cir. 1997) ("When a party offers alleged newly-discovered evidence, the district court should consider whether the omitted evidence was available to the moving party prior to the time for filing his response to the summary judgment motion."). Matador's failure to explain why the evidence was not available prior to the district court's grant of summary judgment constitutes a valid basis for denying Matador's Motion for Reconsideration. *See Russ v. International Paper Co.*, 943 F.2d 589, 593 (5th Cir. 1991) (noting that "the unexcused failure to

B

Matador next argues that, even if the terms of the endorsement are not ambiguous, St. Paul cannot demonstrate that it suffered prejudice as a result of Matador's untimely notice. In Matador's opinion, because St. Paul did not suffer prejudice, the delay of eight days before notice occurred did not discharge St. Paul of its obligation to provide insurance coverage. Matador asserts that the district court erred when it relieved St. Paul of its obligation to provide coverage.

Contrary to Matador's apparent position, courts do not always require a showing of prejudice in order for an insurance company legitimately to deny coverage where the insured fails to comply with an insurance policy's notice provisions. Instead, the impact that untimely notice has on coverage depends on the type of insurance policy. For example, courts traditionally distinguish between two types of insurance policies: "occurrence" policies and "claims-made" policies.[2] In the case of an "occurrence" policy, any notice requirement is subsidiary to the event that triggers coverage. *See FDIC v. Booth*, 82 F.3d 670, 678 (5th Cir. 1996) ("In occurrence based policies, the notice requirement is generally included to aid the insurer in administration of its coverage of claims."); *see*

present evidence [that] is available at the time summary judgment is under consideration constituted a valid basis for denying a motion to reconsider"). Moreover, even if Matador had demonstrated that the evidence constituted "newly discovered evidence," a court may not consider extrinsic evidence when interpreting an unambiguous policy provision. *See CBI Indus.*, 907 S.W.2d at 520 ("Only where a contract is first determined to be ambiguous may the courts consider the parties' interpretation, and admit extraneous evidence to determine the true meaning of the instrument.") (internal citations omitted). Accordingly, we reject Matador's argument that the district court abused its discretion in refusing to consider the additional evidence.

[2] An "occurrence" policy covers the insured for acts or omissions that occur within the policy period, regardless of whether "the claim . . . is brought to the attention of the insured or made known to the insurer during the policy period." *Yancey*, 755 S.W.2d at 918. In contrast, a "claims-made" policy covers the insured only "for claims made during the policy [period] . . . regardless of when the covered act or omission occurred." *National Union Fire Ins. Co. v. Talcott*, 931 F.2d 166, 168 n.3 (1st Cir. 1991); *see also Yancey*, 755 S.W.2d at 918.

*also Zuckerman v. National Union Fire Ins. Co.*, 100 N.J. 304, 324, 495 A.2d 395, 406 (N.J. 1985) (noting that "the requirement of notice in an occurrence policy is subsidiary to the event that invokes coverage"). Courts have not permitted insurance companies to deny coverage on the basis of untimely notice under an "occurrence" policy unless the company shows actual prejudice from the delay. *See Hirsch v. Texas Lawyers' Ins. Exch.*, 808 S.W.2d 561, 562 (Tex. App.—El Paso 1991, writ denied) (noting that the prejudice-notice requirement applies to "occurrence" policies). In the case of a "claims-made" policy, however, notice itself constitutes the event that triggers coverage. *See*, *e.g.*, *FDIC v. Mijalis*, 15 F.3d 1314, 1330 (5th Cir. 1994) (noting that "notice provisions are integral parts of claims made policies"); *McCullough v. Fidelity & Deposit Co.*, 2 F.3d 110, 112 (5th Cir. 1993) ("Notice, as pro vided in the policy, is required in a claims made policy to trigger coverage."). Courts strictly interpret notice pro visions in a "claims-made" policy. *See Booth*, 82 F.3d at 678. Thus, an insurance company may deny coverage under a "claims-made" policy without a showing of prejudice. *See Komatsu v. United States Fire Ins. Co.*, 806 S.W.2d 603, 607 (Tex. App.—Fort Worth 1991, writ denied) (acknowledging the importance of exempting "claims-made" policies from statutory minimum notice requirements); *see also National Union Fire Ins. Co. v. Talcott*, 931 F.2d 166, 168 (1st Cir. 1991).

The fact that courts strictly enforce notice requirements in "claims-made" policies, but take a distinct approach towards notice requirements in "occurrence" policies, reflects a difference in the nature of the bargain underlying each type of policy. Courts interpret notice provisions in "claims-made" policies strictly because in these types of policies, unlike in "occurrence" policies, the insured and insurer specifically negotiate the terms of the notice provisions. *See Komatsu*, 806 S.W.2d at 607 (exempting "claims-made" policies from statutory minimum notice requirements, and noting that

"[e]xtension of the notice period in a claims-made policy constitutes an unbargained for expansion of coverage"); *see also Yancey*, 755 S.W.2d at 923 (noting the advantages to both the insured and insurer in negotiating a "claims-made" policy versus an "occurrence" policy). Hence, courts will not "rewrite policies to permit notice-prejudice to be applied to claims-made policies. . . . [because to do so] would . . . interfer[e] with the public's right to contract." *Hirsch*, 808 S.W.2d at 565 (internal citations omitted).

The policy at issue in this case shares characteristics in common with both an "occurrence" and a "claims-made" policy. To decide, therefore, whether St. Paul needs to show prejudice to deny Matador coverage legitimately, we look to the nature of the bargain underlying their agreement. *See id*. ("Insurance contracts are subject to careful scrutiny to avoid injury to the public. However, we must look to the type of contract bargained for.").

The basic insurance contract between Matador and St. Paul did not include coverage for pollution. The endorsement provision supplemented the basic agreement and constituted additional bargained for coverage. An extension of the notice period under the endorsement would expand this coverage and would expose St. Paul to a risk broader than the risk expressly insured against in the policy. St. Paul and Matador are both sophisticated commercial parties with comparable bargaining power. *See FDIC v. Insurance Co. of N. America.*, 105 F.3d 778, 786 (1st Cir. 1997) (noting that, where the transaction involved sophisticated businesses, there exists "little reason to depart from usual rule of holding parties to their bargain"). The nature of St. Paul's and Matador's bargain, therefore, resembles the nature of the bargain underlying a "claims-made" policy. Accordingly, we see no reason to apply a prejudice requirement and not to hold the parties to the specific terms of their bargain.

We find support for our conclusion in *Certain Underwriters at Lloyd's London v. C.A. Turner Construction Co.*, 112 F.3d 184 (5th Cir. 1997). In that case, the insurance policy contained an "absolute pollution exclusion" clause and a "buy-back" clause. The "buy-back" clause reinstated coverage for certain pollution "occurrences" provided that the insured satisfied four conditions, including that it report such an "occurrence" to the insurer within ninety days after the occurrence became known to the insured. *See Certain Underwriters*, 112 F.3d at 189 n.5. The district court refused to decide whether the policy constituted either an "occurrence" or "claims-made" policy, and instead simply concluded "that the language of the 'buy-back' clause [was] unambiguous and [had to] be enforced according to its plain meaning." *Certain Underwriters at Lloyd's London v. C.A. Turner Constr. Co.*, 941 F. Supp. 623, 629 (S.D. Tex. 1996). We affirmed the district court, noting that the insured failed to comply with the policy's notice requirement, and that under Texas law, "notice provisions are enforceable." *Certain Underwriters*, 112 F.3d at 189 n.6.[3]

Likewise, in this case, under the plain language of the endorsement, timely reporting of the claim constituted one of the events necessary to trigger coverage. We will respect the plain language of the limitation contained in the endorsement. Matador received what it bargained for under the endorsement, with premiums presumably reduced to reflect the limited coverage. Whether St. Paul suffered prejudice as a result of Matador's late notice is irrelevant. The district court properly enforced the insurance policy according to its terms.

C

---

[3] Matador contends that *Hanson Production Co. v. Americas Insurance Co.*, 108 F.3d 627 (5th Cir. 1997), and not *Certain Underwriters*, controls our decision in this case. We, however, find *Hanson* inapposite. The notice provisions at issue in *Hanson* were part of the primary insurance policy, and, in this respect, the policy resembled a traditional "occurrence" policy.

Finally, Matador maintains that the district court erred because the summary judgment evidence established that St. Paul waived any right it may have had to deny coverage. According to Matador, St. Paul twice charged and accepted a deductible relating to the pollution incident even after it became aware of the late notice. Moreover, Matador contends that St. Paul attended a strategy session with Matador and the other owners of the well without any notice of reservation of its rights. According to Matador, St. Paul cannot now deny coverage.

Under Texas law, an insurance company, through its actions, may waive a condition precedent to performance on an insurance policy, or become estopped from denying coverage under the policy. *See FDIC v. United States Fire Ins. Co.*, 956 F. Supp. 701, 705 (N.D. Tex. 1996) (listing Texas cases). Waiver involves the intentional relinquishment of a known right or intentional conduct inconsistent with claiming that right. *See Salzstein v. Bekins Van Lines Inc.*, 993 F.2d 1187, 1191 (5th Cir. 1993) ("Waiver involves the voluntary or intentional surrender of a known right."). Estoppel involves the reasonable reliance of one party on the conduct or statements of another party. If the relying party suffers harm as a result of its reliance, the law estops the other party from disavowing its earlier conduct or statements. *See id.* Under Texas law, however, waiver and estoppel cannot operate to change either the risks covered or the insurance extended under a policy:

> Whereas waiver and estoppel may operate to avoid forfeiture of a policy and may prevent an insurance company from avoiding payment because of the failure on the part of the insurer to comply with some requirement of the policy, waiver and estoppel cannot enlarge the risks covered by a policy and cannot be used to create a new and different contract with respect to the risk covered and the insurance extended.

*The Minnesota Mutual Life Ins. Co. v. Morse*, 487 S.W.2d 317, 320 (Tex. 1972); *see also Texas Farmers Ins. Co. v. McGuire*, 744 S.W.2d 601, 603 (Tex. 1988).

-11-

Applying waiver as requested by Matador would substantially alter and enlarge the risks covered under the insurance policy. In other words, holding that coverage exists, despite Matador's untimely notice, would "materially change the scope of coverage, would be contrary to the plain language of [the insurance policy,] . . . and would circumvent the objective intent of the parties to the contract." *United States Fire Ins.*, 956 F. Supp. at 706. Accordingly, we conclude that St. Paul did not waive its right to deny coverage. The district court properly granted summary judgment in favor of St. Paul.[4]

III

For the foregoing reasons, we AFFIRM the district court's summary judgment.

---

[4]  Matador argues that "the evidence supporting St. Paul's Motion for Summary Judgment was defective and it was error for the District Court to grant summary judgment thereon." Specifically, Matador contends that the district court erroneously denied Matador's motion to strike an affidavit by Valerie Colvin, in which she attested that St. Paul charged Matador the policy deductible as a result of an accounting error. Having concluded that, as a matter of law, waiver may not operate to change the risks covered by an insurance policy, we find immaterial the facts attested to in Valerie Colvin's affidavit. Accordingly, any error by the district court was harmless. *See Multiponics, Inc. v. Guice*, 453 F.2d 853, 855 (5th Cir. 1972) ("We find no basis for reversal in the admission of [witness's] testimony, for erroneous, if it was, it was not material to the district court's decision.").